Carol Ellen GLAMANN, Plaintiff-Respondent,

v.

ST. PAUL FIRE & MARINE INSURANCE
COMPANY and Carl F. Anderson, Defendants-
Appellants.†

Court of Appeals

*No. 85–2266. Submitted on briefs February 9, 1987.—Decided
July 9, 1987.*

(Also reported in 412 N.W.2d 522.)

† Petition to review granted.

For the defendants-appellants the cause was submitted on the brief of *Carroll Metzner* and *Virginia Newcomb* and *Bell, Metzner, & Gierhart, S.C.,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *William Smoler* and *Smoler & Albert, S.C.,* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J. Carl Anderson and St. Paul Fire & Marine Insurance Company appeal from a judgment in favor of Carol Glamann in this legal malpractice action. The jury found that Anderson negligently failed to pursue Glamann's employment discrimination claim against her former employer, Command Performance, a hairstyling salon, and awarded her $2,200 in lost wages. The trial court granted Glamann's post-verdict motion to increase the award to $14,388 and added prejudgment interest and reasonable attorney fees.[1] We conclude that credible evidence supports the jury's discrimination determina-

---

[1]Anderson moved for judgment on the verdict before Glamann filed her post-verdict motions. Glamann does not argue that Anderson's motion for judgment on the $2,200 verdict waived his objection to the jury's determination that Command Performance discriminated against her.

tion, but that the court erred in increasing the jury's award and awarding reasonable attorney fees. We therefore reverse the judgment and remand with instructions to enter judgment consistent with this opinion.

## CREDIBLE EVIDENCE OF DISCRIMINATION

We must sustain a verdict if any credible evidence supports it. *Brain v. Mann,* 129 Wis. 2d 447, 452, 385 N.W.2d 227, 231 (Ct. App. 1986). "[W]e do not look for credible evidence to sustain a verdict the jury could, but did not, reach." *Sumnicht v. Toyota Motor Sales,* 121 Wis. 2d 338, 360, 360 N.W.2d 2, 12 (1984). The jury weighs testimony and evaluates credibility. We must accept the inferences drawn by the jury where more than one inference can be drawn from the evidence. *Bennett v. Larsen Co.,* 118 Wis. 2d 681, 706, 348 N.W.2d 540, 554 (1984).

The elements of legal malpractice are: (1) the existence of an attorney-client relationship; (2) acts constituting the alleged negligence; (3) the attorney's negligence proximately caused the client's injuries; (4) the fact and extent of the injury alleged; and (5) the client would have been successful in the prosecution of an action but for the attorney's negligence. *Lewandowski v. Continental Casualty Co.,* 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979).

In a legal malpractice action, "the plaintiff is compelled to prove two cases in a single proceeding," *Lewandowski,* 88 Wis. 2d at 277, 276 N.W.2d at 287, or a "suit within a suit." *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 103, 362 N.W.2d 118, 124 (1985). The

merits of Glamann's malpractice action depend upon the merits of her discrimination claim. *Lewandowski,* 88 Wis. 2d at 277, 276 N.W.2d at 287. In order for Glamann to prove causation and damages in this malpractice action, she must prove that she would have prevailed against Command Performance had her discrimination claim been properly presented in the first instance. *Id.* at 281, 276 N.W.2d at 289.

Sex discrimination, as defined by sec. 111.32(5)(g), Stats. (1979–80), is prohibited by sec. 111.325. The Wisconsin Fair Employment Act (WFEA), secs. 111.31–111.37, "does not establish a specific procedure by which a complainant must prove a claim of discrimination ...." *Puetz Motor Sales, Inc. v. LIRC,* 126 Wis. 2d 168, 172, 376 N.W.2d 372, 374 (Ct. App. 1985).

> While Wisconsin courts considering claims of sex discrimination under the [WFEA] are not bound by decisions of the federal courts under Title VII [Civil Rights Act of 1964, 42 U.S.C. sec. 2000e], "[t]his court has looked to such federal decisions before for guidelines in applying the state fair employment law."

*Hamilton v. ILHR Dept.,* 94 Wis. 2d 611, 621 n. 4, 288 N.W.2d 857, 861 (1980) (citations omitted).

The *Puetz* court summarized the methodology for proving a discrimination claim:

> The basic allocation of burdens and order of presentation of proof in employment discrimination suits brought under Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e (1982), was determined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *McDonnell Douglas* requires the complain-

ing party to establish a *prima facie* case [by a preponderance of the evidence], which then raises a presumption of discrimination. To rebut the presumption, the defendant need only articulate a legitimate, nondiscriminatory reason for the action taken. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254 (1981). The complainant then must be given the opportunity to prove that the proferred reason is merely a pretext for discrimination. *McDonnell Douglas,* 411 U.S. at 804, 805; *see also Hamilton v. DILHR,* 94 Wis. 2d 611, 619, 288 N.W.2d 857, 861 (1980).

*Puetz,* 126 Wis. 2d at 172, 376 N.W.2d at 374 (footnote omitted). A plaintiff can prove discrimination by direct or circumstantial evidence or by making the required showing under *McDonnell Douglas. Babrocky v. Jewel Food Co.,* 645 F. Supp. 1396, 1417 (N.D. Ind. 1986). Pretext can be shown in one of two ways: (1) the employer was more likely motivated by a discriminatory purpose; or (2) the employer's proferred reason is not credible. A proferred reason is not credible if it has no basis in fact, was not really a factor in the employer's action, or was so removed in time that it was unlikely to be the cause for the employer's action. *Id.* at 1418.

Glamann claims her employer discriminated against her by reducing her hours and discharging her because she was pregnant.

Glamann's expert, Bruce Cameron, testified how a reasonable Department of Industry, Labor and Human Relations equal rights division hearing examiner would have handled a sex discrimination complaint. A complainant must make a minimal showing that she was performing the job for which she was hired and that her pregnancy was more likely than

not a factor, but not the only factor, in her discharge. Absent direct proof, the reasonable DILHR examiner would infer that pregnancy was a factor from the circumstances surrounding the discharge. A reasonable examiner would adhere to the allocation of burdens and order of presenting proof detailed in *Puetz, McDonnell Douglas* and *Burdine.* The examiner would also consider when the employer learned of the pregnancy, when the employer began criticizing the employee, when the discharge occurred, how other pregnant and non-pregnant employees were treated, when the employer's reasons for the discharge were articulated, and if the employee had an opportunity to respond to the employer's criticism. Treatment of employees whose pregnancies became known to the employer after the complainant's pregnancy would not be persuasive because the employer could have changed its policy. However, treatment of pregnant employees prior to the complainant's pregnancy would be persuasive.

Glamann testified that she worked forty hours per week at Command Performance until she told the manager in May 1980 that she was pregnant. Her hours were halved in the second week of May and her appearance was criticized. The manager told her that her hours were reduced because "the shop was slow." Glamann had tendered her resignation in March 1980 but the manager did not accept it because Glamann was "fantastic with customers," a "fine" bookkeeper and got along well with the hair stylists. Glamann was discharged on June 21, 1980 because she was late to work, assigned customers out of order, and failed to inform her supervisor she was going to lunch. Glamann testified that she was five to ten minutes late to work on June 21 because she was doing Command

Performance's banking, that the employees generally covered for each other during lunch without informing the manager, and that she assigned the customer out of order because the customer was impatient.

After her discharge, Glamann sought unemployment compensation. At the hearing on her unemployment compensation claim, Glamann's former co-workers testified that she was neither unpleasant to customers nor hostile to management in front of customers and that she was late to work only once. Command Performance did not examine any of the witnesses and it was not represented by an attorney at the hearing. Although there was testimony that Glamann was difficult to work with, the hearing examiner concluded that Glamann never refused to perform any duty required by Command Performance. Although her job performance dissatisfied Command Performance, the examiner concluded that Glamann did not engage in willful misconduct.

After her discharge, Glamann sought other employment and obtained two part-time positions. She stated that she would have taken twelve weeks of maternity leave for the births of her two children in 1980–82.

Glamann's co-workers testified that other employees were pregnant during Glamann's employment and that none of them had suffered adverse employment consequences. Command Performance employees testified that Roxanne Roy was pregnant and miscarried in April or May 1980. Roy's mother testified that Roxanne was pregnant after March 1981 and miscarried in April 1981, almost a full year after Glamann was discharged. Other pregnant employees were Jean Franklin, a receptionist after Glamann left (1981), and Jackie Prader (a stylist), pregnant from October 1980

to July 1981. Prader testified she was not disciplined because of her pregnancy. Muriel Nieskes, the other bookkeeper-receptionist at the time Glamann was discharged, testified that she heard Command Performance's owner say he wanted someone attractive in the reception area. Nieskes testified that she did not ask late-night customers to prepay because she stayed until 10 p.m. to do the books. Security did not tell her she had to be out of the building by 9 p.m., contrary to Glamann's testimony.

The assistant manager, Shirley Schimmeyer, testified that Glamann did the bookkeeping, answered the phones, opened the shop and made bank deposits. Schimmeyer did not have her shop key with her on June 21 and employees and customer(s) had to wait for Glamann to open the shop. Glamann was rude to Schimmeyer and she fired Glamann later that day. Schimmeyer testified that Glamann admitted to her that she smoked marijuana in Command Performance's bathroom. Glamann denied smoking marijuana at Command Performance. Schimmeyer did not mention the marijuana incident at the unemployment compensation hearing, believing that it was an example of general misconduct. At trial, Schimmeyer testified that Glamann had been tardy ten times. At the unemployment compensation hearing, Schimmeyer testified Glamann had been late only once. Schimmeyer testified at trial that Glamann did her bookkeeping as required and had a reasonable phone manner. Schimmeyer's other allegations regarding Glamann's conduct (dressing "too sexy" and dancing in the reception area) were not raised at the unemployment compensation hearing.

Rosemary Kasten, Command Performance's manager, testified that Glamann had a bad attitude and

had been reprimanded for criticizing stylists, seeking pre-payment from customers, her appearance, and missing work because of a trip to Florida. The hours of most employees were reduced in May 1980 because the shop was not busy. Glamann was discharged because of these accumulated incidents.

When asked to assume that Glamann was discharged for the reasons articulated by her former co-workers, defendant's expert, Attorney Robert Gingras, testified that the employer would have had a legitimate basis for discharging her, notwithstanding her pregnancy. However, assuming that the employer's discharge reasons were fabricated or arose before her resignation was refused, Glamann would have a better chance of prevailing in her discrimination claim.

We conclude that Glamann made a prima facie case of discrimination by presenting evidence that she was performing her job as required, that Command Performance knew she was pregnant, and that criticism of her began after she announced her pregnancy. This evidence raised the presumption that her pregnancy was a factor in the decision to discharge her. To rebut the presumption, former employees testified that Glamann was difficult to work with although she did her assigned duties well. The employees also described several incidents which preceded Glamann's discharge.

Although legitimate, nondiscriminatory reasons were articulated for Glamann's discharge, there was evidence from which the jury could have inferred that the examiner would have concluded that the reasons given for Glamann's discharge were pretextual. Employee testimony that Roy was pregnant during Gla-

mann's employment was contradicted by Roy's mother, and discharge reasons articulated at trial (marijuana, numerous times late to work, dancing in the reception area, appearance) were not raised at the unemployment compensation hearing. These inconsistencies would have permitted the jury to infer (because there was no direct evidence of discrimination) that the examiner would have concluded that the proferred discharge reasons were not credible or that Command Performance was more likely motivated by a discriminatory reason. We must accept the jury's inference. Because the jury's verdict is supported by credible evidence, we must sustain the jury's determination that Glamann was discriminated against by Command Performance.

## LOST WAGES

The jury awarded Glamann $2,200 in lost wages due to Command Performance's unlawful discrimination. The trial court increased the award to $14,388, a net lost wages figure calculated by subtracting from Glamann's actual lost wages ($19,080),[2] the amount of actual interim earnings ($1,079), unemployment compensation benefits ($1,885), and unpaid maternity leave periods ($1,748). The court did not reduce lost wages for amounts earnable with reasonable diligence because Anderson did not meet his burden of showing that Glamann failed to mitigate her damages.

A trial court may not change an answer in a jury's verdict if, viewing the evidence in the light most favorable to the verdict, the verdict is supported by

[2]The parties do not dispute the period for which damages may be awarded, from the date of Glamann's discharge (June 21, 1980) to the end of 1982.

any credible evidence. *Bennett,* 118 Wis. 2d at 705, 348 N.W.2d at 554.

■

The successful malpractice plaintiff may recover the value of the lost claim, "the amount that would have been recovered ... except for the attorney's negigence ...." *Lewandowski,* 88 Wis. 2d at 278, 276 N.W. 2d at 287 (citation and footnote omitted). In *Lewandowski,* recovery against the negligent attorney was "the damages that would have been awarded to the [plaintiff] in an action against [the original tortfeasor]." *Id.* at 277, 276 N.W.2d at 287. The parties litigated the underlying automobile accident to determine damages in the malpractice action. *Id.* at 281–82, 276 N.W.2d at 289. Consequently, what Glamann would have recovered in a successful discrimination action against Command Performance is the measure of damages against Anderson, her negligent attorney.

■

The successful discrimination plaintiff may recover lost wages reduced by interim earnings or amounts earnable with reasonable diligence (mitigation) and unemployment compensation benefits. Sec. 111.36(3)(c), Stats. (1979–80). The parties dispute the method by which damages in this case should have been proven and calculated. Anderson contends:

> The plaintiff has relied on law in Equal Rights Division cases to attempt to prove that the employer must show that the employee failed to mitigate damages. It is his contention that because the defendant did not provide direct testimony on mitigation, the damages cannot be reduced from what was contended by the plaintiffs.

> This case is a legal malpractice case. It is the plaintiff's burden to prove damages. [App. Br. at 16–17.]

Glamann argues that damages are determined under the rules applicable to employment discrimination cases. We have concluded that Glamann met her burden in malpractice of showing she would have prevailed before a reasonable examiner had her claim been timely filed. Having shown that Command Performance discriminated against her and that Anderson was negligent in his representation, Glamann was entitled to recover from Anderson what she would have recovered from Command Performance had her discrimination claim been timely filed.

The Wisconsin Supreme Court has referred to federal law in discussing damages under the Wisconsin Fair Employment Act. *Anderson v. Labor & Industry Rev. Comm.,* 111 Wis. 2d 245, 255, 330 N.W.2d 594, 599 (1983). In federal employment discrimination cases, an employee seeking lost wages for the period of discrimination must initially establish the amount of damages. The employer must then prove, as an affirmative defense, that the employee failed to mitigate those damages. *Hanna v. American Motors Corp.,* 724 F.2d 1300, 1306–07 (7th Cir.), *cert. denied,* 467 U.S. 1241 (1984); *Sprogis v. United Air Lines Inc.,* 517 F.2d 387, 392 (7th Cir. 1975). To satisfy its burden, the employer must show that the employee failed to exercise reasonable diligence to mitigate his or her damages and that it was reasonably likely that the employee might have found comparable work by exercising reasonable diligence. *Hanna,* 724 F.2d at 1307.

The jury instruction on damages was consistent with the mitigation requirements addressed above. Anderson concedes that this instruction was proper.

> The burden of proof is upon the defendant to satisfy you to a reasonable certainty by the greater weight of the credible evidence that the plaintiff should have taken steps to reduce her loss and failed to do so.

Glamann's hours were reduced the second week of May 1980 and she was discharged on June 21, 1980. She testified that she had worked forty hours per week, earning $3.60 per hour ($144 per week) before her hours were reduced. There was no direct testimony as to Glamann's actual lost wages, although on motions after verdict, the trial court stated that Glamann's actual lost wages were $19,080. The parties stipulated before the jury that she earned $1,079 in 1981–82 and that she received $1,885 in unemployment compensation benefits during that period.[3] She testified that she would have taken twelve weeks of maternity leave for the births of her children in 1980–82. The court instructed the jury to deduct Glamann's interim earnings and unemployment compensation benefits to arrive at a net lost wages figure. The jury awarded Glamann $2,200 in net lost wages which the court increased on motions after verdict to $14,388.

---

[3]Anderson argues "Just because there is a finding of discrimination, does not mean that the employee automatically receives back pay." The jury was instructed that it should reduce lost wages as required by sec. 111.36(3)(c), Stats. (1979–80). Because Anderson did not object to this instruction or argue that a lost wages award was inappropriate, this argument is waived. Sec. 805.13(3), Stats.

Anderson argues that Glamann's testimony was insufficient to prove that she lost $14,388 in net wages. Although Glamann did not specify how many weeks she was actually unemployed, she testified that her 1981–82 income was $1,079 and that she would have taken twelve weeks of maternity leave in 1980–82. This testimony was sufficient to permit the jury to determine wages lost due to discrimination. The burden then shifted to Anderson to show that Glamann failed to mitigate her damages by taking reasonable steps to find employment.

The mitigation testimony was limited to Glamann's direct testimony that she attempted to find other employment by answering ads in the West Bend and surrounding newspapers, and that she worked for Auto Glass Specialists as a part-time bookkeeper and receptionist and for Engercress Corporation part-time during Christmas 1981. She did not find any work in 1982. She was not cross-examined about her efforts to find work, including how many applications she made, where she applied, and how many weeks she actually worked. Glamann testified that she had been steadily employed from 1977 until she was hired by Command Performance in 1979.

There was no direct evidence that Glamann failed to mitigate her damages. However, the jury could have concluded that it was unlikely that an examiner would have believed Glamann remained unemployed for extended periods after her discharge from Command Performance. Glamann testified that she had been steadily employed prior to Command Performance. The jury could have concluded that an examiner would also have disbelieved Glamann's testimony that she answered classifieds in an attempt to locate

additional employment and that she would have taken twelve weeks of maternity leave during the period in question. The trial court erred in increasing the lost wages award. We therefore reinstate the jury's $2,200 verdict.

## PREJUDGMENT INTEREST

On motions after verdict, Glamann sought prejudgment interest. The trial court awarded Glamann 7% interest per annum from June 21, 1980, the date of her discharge.

Anderson argues that awarding prejudgment interest in this malpractice case will not effectuate a stated purpose of the Wisconsin Fair Employment Act, i.e., "to discourage discriminatory practices in the employment area." *Anderson,* 111 Wis. 2d at 259, 330 N.W.2d at 601. Anderson also argues that Glamann did not present expert testimony that prejudgment interest was an appropriate element of damages.

In *Anderson,* the court held that the Labor and Industry Review Commission is authorized to award prejudgment interest as part of a lost wages award in an employment discrimination case under the WFEA. *Id.* at 258, 330 N.W.2d at 601. Although the WFEA does not expressly provide for prejudgment interest on lost wages awards, prejudgment interest is awarded to make the prevailing complainant "whole," a purpose of the act. *Id.* at 259–60, 330 N.W.2d at 601. Awarding interest in these cases "is consistent with the rules for awarding prejudgment interest in Wisconsin." *Id.* at 260, 330 N.W.2d at 601. Prejudgment interest is not a penalty. Rather, it reflects the value of the use of the money. *Id.* The calculation of prejudgment interest

does not require expert testimony. *Id.* at 259 n. 9, 330 N.W.2d at 601.

■

Because lost wages must be increased to reflect prejudgment interest at 7% per annum, interest need not be submitted as a jury question. It is awarded as a matter of law. The reasonable examiner would have awarded lost wages increased by prejudgment interest. Therefore, Glamann may recover prejudgment interest from Anderson whose negligence precluded her from bringing an action against Command Performance. We reverse the trial court's prejudgment interest award and remand for a determination of interest on the $2,200 verdict.

## *ATTORNEY FEES*

Glamann contends that we should not address this issue because it is raised for the first time on appeal. We will examine if and how the issue of attorney fees came before the trial court to determine whether we should consider it.

Glamann made five motions after verdict, one of which was to add to the verdict "the attorney fees and actual costs attributable in obtaining the finding of discrimination." On June 3, 1985, the court noticed this motion and Anderson's motion for judgment on the verdict for hearing on June 25, 1985. The court's notice read "Get Briefs in on Legal Issues before this Hearing." Glamann submitted a brief shortly before June 25. Anderson did not submit a brief. His attorney appeared on June 25. There is no transcript of the June 25 hearing and the clerk's minutes show only that counsel argued, and the court took the matter under advisement.

On July 25, the court extended the ninety days within which it was required to rule on the motions after verdict, and sent a copy of its order to the parties' attorneys. On July 30, Anderson's attorney wrote the court asking permission to file a reply to Glamann's brief in light of the court's July 25 order.

On August 13, 1985, the court denied Anderson's request, and on September 30, issued its decision awarding attorney fees. The decision gave Anderson an opportunity for a hearing if he wished to contest the reasonableness of the $13,020.90 in fees requested in Glamann's motion after verdict. Anderson did not request that hearing. He moved the court to reconsider its order on November 4, claiming that "Attorney Smoler waived any right to attorney's fees by not presenting a claim for the same as an element of damage in the case in chief." The court denied the motion for reconsideration "[f]or the reasons detailed in Attorney Smoler's November 5, 1985 letter to the Court ...." This letter is not a part of this record.

The reason for the rule that we will generally not address issues raised for the first time on appeal is to give trial courts the opportunity to correct errors, thus avoiding appeals. *Herkert v. Stauber,* 106 Wis. 2d 545, 560, 317 N.W.2d 834, 841 (1982). Here, the trial court had two opportunities to hear both sides of the attorney fees issue, but declined the opportunity to consider Anderson's authority for his position. Though we sympathize with the trial court's displeasure with Anderson's failure to file a timely brief, its refusal to consider his brief benefited no one. The purpose of briefs is to assist the court in coming to a correct and just decision. It is not necessary for a court to impair its decision making ability by refusing to consider

659

briefs. There are other ways to encourage attorneys to be diligent. The trial court was given the opportunity to correct an asserted error but after considering material that we cannot review, adhered to its original position. The reason for our waiver rule leads to our conclusion that we should address the attorney fees issue.

Glamann's measure of damages against Anderson, her negligent attorney, is what she would have recovered in a successful discrimination action against Command Performance. In *Watkins v. LIRC,* 117 Wis. 2d 753, 763, 345 N.W.2d 482, 487 (1984) the court held that reasonable attorney fees are awarded to prevailing plaintiffs under the WFEA to make discrimination victims "whole" and to discourage discriminatory practices in employment.

Glamann's reasonable attorney fees were an element of damages to be proven at trial. The dissent wrongly believes that attorney fees may only be determined after trial. A plaintiff need only ask his or her expert witness what amount of attorney fees would reasonably have been incurred in the administrative proceeding. Glamann had the burden of proving her damages to the jury in this malpractice action. *Brantner v. Jenson,* 121 Wis. 2d 658, 663–64, 360 N.W.2d 529, 532 (1985).

The dissent's conclusion that a trial court is the proper fact finder as to the amount and reasonableness of attorney fees fails to recognize that tort claims are tried to juries. Wisconsin has both statutory and constitutional provisions protecting this right.[4] The

---

[4]Section 805.01(1), Stats., and art. I, sec. 5, Wisconsin Constitution.

jury was entitled to consider whether a hearing examiner would have concluded the fees were reasonable. The dissent confuses attorney fees Glamann would have incurred in prosecuting her claim before DILHR with the fees she incurred in the circuit court. Even Glamann admits that she has not requested and did not receive an award of attorney fees for any work related to the malpractice action.[5] However, we need not address whether Glamann should have been awarded reasonable attorney fees because she did not submit any proof to the jury on this element of damages. Because she did not meet her burden of proving all of her damages, the trial court erred in adding attorney fees to the jury's verdict.

██

We held in abeyance Glamann's motion to remand to the trial court for a determination of reasonable appellate attorney fees. Attorney fees are not recoverable unless specifically provided for by statute or contract or if the opponent's wrongful act caused the party seeking fees to incur them. *Domain Industries, Inc. v. Thomas,* 118 Wis. 2d 99, 101, 345 N.W.2d

---

[5]The reason for the dissent's confusion is that most of Glamann's time in the circuit court was spent proving her claim against Command Performance, and little time was spent proving her claim against Anderson. At least in theory, the time spent in proving Glamann's claim against Command Performance would be the same in circuit court as before DILHR. Therefore, though her attorney fees are not compensable in circuit court, the same attorney's work, and presumably the same time is compensable before DILHR. The conceptual difference is that she would have had to prove her reasonable attorney fees in a DILHR hearing but she was required to prove the fees a DILHR examiner probably would have awarded her in the malpractice trial. The fact finder in the first instance is an examiner and in the second, a jury.

516, 518 (Ct. App. 1984). The Wisconsin Supreme Court has not addressed awarding appellate fees under the WFEA. *Watkins* was an administrative review, not an appeal from a circuit court jury trial. Rights to attorney fees in administrative proceedings are governed by different principles than rights to attorney fees in tort actions. We therefore cannot accept the dissent's conclusion that because attorney fees are recoverable in administrative proceedings, they are therefore recoverable in tort actions. Because Glamann did not incur appellate fees due to any wrongful act by Anderson, we do not award appellate fees, and decline to remand for a consideration of those fees.

*By the Court.*—Judgment affirmed in part and reversed in part.

SUNDBY, J. (*dissenting*). In *Watkins v. LIRC,* 117 Wis. 2d 753, 763, 345 N.W.2d 482, 487 (1984), the Wisconsin Supreme Court stated that in *Anderson v. Labor & Industry Rev. Comm.,* 111 Wis. 2d 245, 259, 330 N.W.2d 594, 601 (1983), it had "specifically recognized that an individual who has been the victim of discriminatory treatment and who prevails in an action brought pursuant to the Fair Employment Act should be 'made whole.'" The *Watkins* court further stated: "It would be contrary to the purposes of the [Fair Employment] Act if the person whose rights have been vindicated ends up in an economically worse position than when he or she started." *Id.* at 764, 345 N.W.2d at 487.

Glamann has been the victim of discriminatory treatment and, for purposes of this litigation, she has prevailed in an action brought pursuant to the Wisconsin Fair Employment Act (WFEA). But she has not

been made whole. She will have a judgment for lost wages in the amount of $2,200 with interest, but she incurred attorney fees of $10,858.40[1] and costs in the trial court and undetermined attorney fees in this court. We do not allow her to recover these fees and costs. Glamann has achieved a Pyrrhic victory. She will end up significantly worse off economically than when she started.

The majority denies Glamann attorney fees at trial because she did not prove them to the jury, and attorney fees on this appeal because there is no statute authorizing them. I conclude that Glamann proved her attorney fees and costs at trial and that under *Watkins, supra,* she is entitled to attorney fees and costs on appeal. Therefore, I respectfully dissent.

## I. ATTORNEY FEES AT TRIAL

The majority denies Glamann attorney fees for trial preparation and trial of her discrimination suit within the malpractice suit. In part III of this opinion I point out that the defendants waived objection to the award of attorney fees and costs at trial and raise for the first time on this appeal their objection to the attorney fees on the ground that no proof of those fees was presented to the jury. I would not address an issue raised for the first time in their briefs to this court.

However, I will address the issue on its merits because it presents an important issue of first impres-

---

[1]The defendants state that the court awarded Glamann $13,020.90 for her attorney fees at trial. In fact the court awarded Glamann attorney fees in the amount of $10,858.40 and expenses attributable to her discrimination claim in the amount of $2,162.50. Since the defendants do not challenge the award of such expenses, we should not reverse that part of the judgment.

sion: In a legal malpractice action where the plaintiff is entitled in the underlying action or proceeding to an award of his or her costs and expenses including reasonable attorney fees if he or she prevails, is the defendant entitled to have the reasonableness of the attorney fees submitted to a jury or may attorney fees be determined by the court?

The case was tried assuming that Glamann's discrimination claim had been timely filed with the Equal Rights Division of the Department of Industry, Labor and Human Relations (DILHR). Had she prevailed in the administrative proceedings, Glamann would have been entitled to recover her costs and expenses, including reasonable attorney fees. *Watkins,* 117 Wis. 2d at 765, 345 N.W.2d at 488. Procedurally, Glamann would have submitted her claim for her costs and expenses to the DILHR after a decision in her favor on her discrimination claim.

The special verdict asked the jury five questions: (1) Was Glamann's attorney negligent? (2) Was Glamann negligent? (3) What was the percent of negligence of each? (4) Did Command Performance discriminate against Glamann? and (5) What were her loss of pay and medical expense damages? In motions after verdict Glamann asked the court to add to the verdict the attorney fees and actual costs incurred by Glamann which were attributable to obtaining the finding of discrimination. The trial court granted Glamann's motion and the judgment included an award of attorney fees of $10,858.40 and costs of $2,162.50.

The majority concludes that Glamann's attorney fees were "an element of damages to be proven at trial." Majority opinion at page 660.[2] This conclusion is

---

[2]The majority opinion does not address the judgment insofar

correct only if the defendants were entitled to a jury trial on the question of the reasonableness of the requested attorney fees. This conclusion is incorrect because (a) determination of the reasonableness of attorney fees is a question of law, not of fact, and (b) Glamann's attorney fees incurred in proving her discrimination claim did not become an element of damages until she had prevailed on her claim.

(a) *Question of Law.*

The majority does not contend that the defendants were entitled to a jury trial on the question of Glamann's right to recover attorney fees. Apparently they agree that a victim of discrimination must be awarded attorney fees in order to be made whole under the WFEA. *See Watkins,* 117 Wis. 2d at 765, 345 N.W.2d at 488; *In Matter of Estate of Trotalli,* 123 Wis. 2d 340, 363–64, 366 N.W.2d 879, 890 (1985).

The majority concludes, however, that Glamann's claim against her negligent attorney is a tort claim and that the defendants are entitled to a jury trial under sec. 805.01, Stats., and art. I, sec. 5, Wis. Const. Section 805.01 confers no right broader than that preserved by the constitution. The right preserved by the constitution is to have questions of fact determined by a jury, not questions of law. *Kiley v. Chicago, M. & St. P. R. Co.,* 138 Wis. 215, 225–26, 119 N.W. 309, 314 (1909).

The question of the reasonableness of attorney fees is a question of law. *Standard Theatres v. Transportation Dept.,* 118 Wis. 2d 730, 746–47, 349 N.W.2d 661, 670–71 (1984); *State Bank of Hartland v. Arndt,* 129 Wis. 2d 411, 423 n. 3, 385 N.W.2d 219, 225 (Ct.

as Glamann was awarded her trial expenses other than her attorney fees.

665

App. 1986). The determination of the reasonableness of attorney fees requires an exercise of discretion by the trial court. Upon review, the trial court's determination of the value of an attorney's services will be sustained unless the court abused its discretion. *Standard Theatres,* 118 Wis. 2d at 747, 349 N.W.2d at 671. Attorney-fee determinations have a "special nature." *Tesch v. Tesch,* 63 Wis. 2d 320, 334, 217 N.W.2d 647, 654 (1974). In *Tesch* the court said:

> The judge has been aware of the amount of time consumed by the trial and the nature and complexity of the issues involved. He has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception. *He has the expertise to evaluate the reasonableness of the fees with regard to the services rendered. It is not really the type of issue or question of fact where an adversary presentation is necessary to the presentation of evidence necessary to a determination. ...* [T]he *Hennen v. Hennen Case*[, 53 Wis. 2d 600, 606, 193 N.W.2d 717, 720 (1972),] allows the supreme court on review to make an independent determination of the reasonableness of attorneys' fees. [Emphasis added.]

*Id.* at 334–35, 217 N.W.2d at 654–55.

An independent review on appeal as to the reasonableness of attorney fees is possible "because the value of legal services is reviewed on appeal by judges who have expert knowledge as to the reasonable value of legal services." *Herro, McAndrews & Porter v. Gerhardt,* 62 Wis. 2d 179, 183, 214 N.W.2d 401, 403 (1974).

Determination of the value of legal services requires the exercise of discretion by a judge with the

expertise acquired through training, experience and observation. Discretion should not be exercised by a jury. *Helmbrecht v. St. Paul Ins. Co.,* 122 Wis. 2d 94, 362 N.W.2d 118 (1985) does not require a contrary result.

In *Helmbrecht,* 122 Wis. 2d at 124, 362 N.W.2d at 134, the court stated: "This is a suit alleging negligence of an attorney, and the Wisconsin Constitution guarantees a jury trial if the parties desire one." Read in context, this statement merely confirms that an attorney is entitled to have a jury decide the question of whether he was negligent. *See Chocktoot v. Smith,* 571 P.2d 1255, 1258 (Or. 1977) ("Unlike its decision of a disputed issue of the professional standard of care, the jury cannot decide a disputed issue of law on the testimony of lawyers."). *Chocktoot* was discussed by the *Helmbrecht* court at length and with approval.

That the legal malpractice action is one sounding in tort does not mean that the issues of law in the suit-within-the-malpractice suit are somehow transformed into issues of fact. For a discussion of the problem in a legal malpractice case of allocating between the jury and the judge questions of fact and questions of law, *see* Leibson, *Legal Malpractice Cases: Special Problems in Identifying Issues of Law and Fact and in the Use of Expert Testimony,* 75 Ky. L.J. 1 (1986–87).

I conclude that a legal malpractice action does not change the general rule that in an action tried by a jury, questions of law are for the court to determine, but it is the function of the jury to pass upon questions of fact. A multitude of decisions establishes the general rule. 4 *Callaghan's Wisconsin Pl. & Prac.,* sec. 33.02, p. 396 (3rd ed. 1978). The attorney's negligence may involve issues in the underlying action usually decided by a judge, but the question of whether the

attorney was negligent will still be a question of fact. I conclude that the approach adopted by the trial court is not precluded by sec. 805.01, Stats., or the constitution and was well suited to ensure that the "make-whole" objective of the WFEA was satisfied.

(b) *Attorney Fees Not Provable Until Glamann Prevailed.*

In *White v. New Hampshire Dept. of Empl. Sec.,* 455 U.S. 445 (1982), the issue was whether a postjudgment request for an award of attorney's fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. sec. 1988, was a "motion to alter or amend the judgment" subject to the ten-day timeliness standard of Fed. R. Civ. P. 59(e). The court held that it was not and stated:

> Section 1988 provides for awards of attorney's fees only to a "prevailing party." Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has "prevailed." Nor can attorney's fees fairly be characterized as an element of "relief" indistinguishable from other elements. Unlike other judicial relief, the attorney's fees allowed under sec. 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action proved at trial. See Hutto v. Finney, 437 US, at 695 n 24, 57 L Ed 2d 522, 98 S Ct 2565.

As the Court of Appeals for the Fifth Circuit recently stated:

> "[A] motion for attorney's fees is unlike a motion to alter or amend a judgment. It does not imply a change in the judgment, but merely seeks

what is due because of the judgment. It is, therefore, not governed by the provisions of Rule 59(e)." Knighton v. Watkins, 616 F2d 795, 797 (1980).

*White,* 455 U.S. at 451–52.[3]

These principles apply equally to an award of attorney fees under the WFEA. Glamann became entitled to an award of attorney fees only when the jury returned its verdict finding that Command Performance discriminated against her. Any evidence Glamann would have attempted to introduce, expert or otherwise, as to her attorney fees would have been inadmissible because she had not yet established her entitlement thereto. An inquiry into her entitlement to attorney fees could not commerce until she had prevailed.

Even if the majority is correct that Glamann should have proved through expert testimony what might have been awarded her as attorney fees if she prevailed, we penalize Glamann excessively and unnecessarily for the good faith mistake made by her counsel and the trial court. We announce herein a procedural requirement in discrimination-cum-legal malpractice suits which could not have been anticipated by the most experienced and diligent counsel and learned trial court. Applying the principles of *Stivarius v. DiVall,* 121 Wis. 2d 145, 358 N.W.2d 530 (1984), if we do reverse, we should reverse under sec. 752.35, Stats., and allow Glamann to prove her attorney fees and costs.

---

[3]An award of attorney fees to Glamann is not unlike the award of prejudgment interest which the majority concludes is awarded as a matter of law and need not be submitted to a jury. Majority opinion at page 658.

## II. ATTORNEY FEES ON APPEAL

The majority denies Glamann's motion for attorney fees on this appeal, to be determined by the trial court. Glamann's failure to present to the jury proof of her attorney fees at trial cannot affect her right to costs and fees on appeal. The majority denies Glamann attorney fees on appeal because (a) they are not recoverable unless specifically provided for by statute and (b) the Wisconsin Supreme Court has not addressed awarding attorney fees on appeals under the WFEA. Neither conclusion has merit. The WFEA is a statute which does not specifically provide for attorney fees. This is a right created by the court in *Watkins,* 117 Wis. 2d 765, 345 N.W.2d at 488, to fulfill the purposes of the WFEA. The right to appeal fees was recognized in *Watkins* where the court stated: "We ... remand to DILHR with directions to determine a reasonable attorney's fee award for Watkins, *including reasonable attorney's fees for this appeal." Id.* at 766, 345 N.W.2d at 488 (emphasis added).

A victim of discrimination cannot be made whole if he or she is forced to bear any part of the cost of the litigation which vindicates his or her rights. "Without an award of reasonable attorney's fees, few victims of discrimination would be in an economic position to advance both their individual interest and the public's interest in eliminating discriminatory employment practices." *Watkins,* 117 Wis. 2d at 764, 345 N.W.2d at 488.

The majority attempts to distinguish *Watkins* on the grounds that case was an administrative review, not an appeal from a circuit court jury trial. The majority demonstrates it has not grasped the "suit-within-a-suit" concept. As *Lewandowski v. Continen-*

*tal Casualty Co.,* 88 Wis. 2d 271, 281, 276 N.W.2d 284, 289 (1979), emphasized, the ultimate goal in a legal malpractice suit is to determine what the outcome *should* have been if the issue had been properly presented in the first instance. The jury determined that Glamann's employer discriminated against her and that she was damaged by that discrimination. When the negligent attorney and his insurer appealed this finding by the jury they acted in the stead of Glamann's employer who would, presumably, have made the same appeal from the same determination by the DILHR. To deny Glamann her reasonable attorney fees and costs on this appeal because her negligent attorney has prevented her from proceeding as she would have in the absence of his negligence would frustrate the "make-whole" objective of the WFEA.

Admittedly Glamann cannot be made entirely whole because she must bear the attorney fees incurred in the negligence suit against her attorney and his insurer and may recover only her statutory costs in that suit. However, that result is not a function of the WFEA or of the nature of a legal malpractice action per se, but of the so-called American Rule as to recovery of attorney fees.

## III. WAIVER

The trial court gave the defendants an opportunity to be heard on Glamann's motion for attorney fees and costs. They did not take it. In their docketing statement they stated the issue to be that Glamann offered no proof to the jury that the DILHR would have awarded her attorney fees and that the award of attorney fees was excessive. Only in their briefs have

they raised the issue that Glamann was required to prove to the jury the reasonableness of her attorney fees. They did not raise that issue in the trial court. We will not ordinarily consider issues raised for the first time on appeal. *Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980). I see no reason in this case to depart from this rule.