Lyle SCHOLMER, a minor, by C.M. Bye, his guardian ad litem, Plaintiff-Respondent-Cross-Appellant,†

v.

Robert I. PERINA and Northwestern National Insurance Company, Defendants-Appellants-Cross-Respondents.

Court of Appeals

*No. 90–0952. Submitted on briefs December 17, 1990.—Decided June 11, 1991.*

(Also reported in 473 N.W.2d 6.)

† Petition to review granted.

On behalf of defendants-appellants-cross-respon-dents, the cause was submitted on the briefs of *Virginia L. Newcomb* of *Bell, Metzner, Gierhart & Moore, S.C.* of Madison.

On behalf of plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Arnold P.*

*Anderson* of *Capwell, Berthelsen, Nolden, Casanova, Pitts & Kallenbach, Ltd.* of Racine.

Before Cane, P.J., LaRocque and Myse, JJ.

LAROCQUE, J. Attorney Robert I. Perina and his insurer, Northwestern National Insurance Company, appeal a judgment entered upon a legal malpractice verdict in favor of Perina's former client, Lyle Schlomer, d.o.b. 11/5/75. Lyle, through the efforts of another attorney, settled his underlying personal injury claim against a farm machinery manufacturer and its insurer. Lyle then pursued this malpractice action on the theory that Perina's three years of unjustified inactivity caused a lesser settlement and also caused Lyle the loss of use of the money from an earlier and larger settlement. A jury agreed, and the trial court, after deducting a hypothetical attorney fee, entered judgment on the verdict.

We conclude that allowance of recovery here opens the door to malpractice claims whereby there is no just or sensible stopping point. We therefore reverse the judgment and need not address the other issues raised by the parties.

Lyle fell into a silo auger on his family farm in 1977 when he was less than two years old and suffered permanent disabling injuries. Lyle's parents sought no legal advice in the belief that Lyle's father, Marvin Schlomer, was primarily responsible for the accident. Perina went to the farm in 1981 and solicited the potential products liability claim from Lyle's parents. He did some preliminary investigation and prepared a "Day in the Life" video demonstrating the impact of Lyle's injuries on his ability to function as a five-year-old. He had photos taken, gathered medical records and consulted with experts. According to Lyle's trial witnesses, however,

Perina did little or nothing of consequence for three years thereafter. At the end of the three years, in December 1984, the Schlomers discharged Perina and retained attorney C.M. Bye, who promptly filed suit in federal court and, within a year, after discovery and negotiations, settled Lyle's claim against A.O. Smith and its insurer for $1,036,236.

Several years later, in 1988, Lyle filed this malpractice action. At trial, Lyle presented expert testimony including that of attorney Robert Weisel. According to Weisel, who reviewed Perina's pretrial deposition and affidavit, Perina essentially did nothing for a three-year period. Weisel testified that Perina gave four "excuses" for his behavior. First, Perina spent time traveling to agricultural shows and related activities to broaden his knowledge of farm machinery and observe developments in engineering safety; second, Perina was waiting for the decision in *Korth v. American Family Ins. Co.,* 115 Wis. 2d 326, 340 N.W.2d 494 (1983), dealing with the statute of limitations upon parents' claims arising out of injuries to their child; third, Perina became disabled by illness; and fourth, Perina delayed further action due to "inflationary factors."

Weisel told the jury that none of these explanations was valid: Perina, an experienced farm accident attorney, had ample time to acquire all the necessary knowledge relevant to the claim before 1982; *Korth* had no bearing whatever upon Lyle's claim; *Korth* dealt only with the parents' claims arising out of the child's injuries; Weisel also testified that Perina would have a conflict of interest if he pursued the claims of both Lyle and his parents, and that, in any case, the parents' claim here was dwarfed by the enormous injuries and damages suffered by the child. Perina's illness did not occur until 1984 and was of short duration; and it is unheard of to

delay a claim of such magnitude in expectation that inflation may increase the amount of settlement.

Weisel also testified that Perina's unjustified failure to act caused Lyle's personal injury claim to diminish in value. Specifically, the otherwise dramatic impact of the "Day in the Life" video was partially lost because it was an image of the past and no longer reflected Lyle's condition. On the issue of damages, Weisel testified that the claim had a prior value 20% higher than the amount the insurance company paid in 1985, while attorney Bye set the value of the case prior to the three-year delay at $1.5 million. The jury set the prior value of the claim at $1,270,000. It also awarded $406,000 for loss of use of the earlier and larger lost settlement. The trial court deducted an attorney fee from the award and approved the verdict as adjusted.

■

Generally, liability will follow a proper finding of causal negligence:

> However, negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial factor' in causing the injury rests upon considerations of public policy.

*Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976) (quoting *Hass v. C&NW Ry. Co.,* 48 Wis. 2d 321, 326, 179 N.W.2d 885, 888 (1970)).

■

The application of these public policy considerations is solely a function of the court. *Id.* Thus, our supreme court has held that even where the chain of

causation is complete and direct, recovery may be denied if: (1) The injury is too remote from the negligence; (2) the injury is too wholly out of proportion to the tortfeasor's culpability; (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *Id.* The cases in which a causally negligent tort-feasor is relieved of liability are infrequent and present unusual and extreme considerations. *Stewart v. Wulf,* 85 Wis. 2d 461, 479, 271 N.W.2d 79, 88 (1978).

Among the various criteria set forth, the absence of a sensible or just stopping point has application here. The traditional elements of a cause of action in negligence are (1) duty and its breach (negligence), (2) a close connection between the conduct and the injury (cause in fact) and (3) actual loss (damages). Prosser & Keeton on the Law of Torts § 30 (5th ed. 1984). In rejecting the cause of action here for loss of an earlier and larger settlement, we will assume without deciding that Perina is wrong when he argues that Lyle has not proven either cause in fact or damages to the degree of proof required.

With regard first to negligence, if unjustified inactivity toward a file for a time less than the limitation period is actionable, an unjustified delay of three months may serve the purpose as well as one of three years. Countless busy law offices may be negligent for failing to hire additional help where caseloads are high and matters are temporarily set aside. While the Supreme Court Rules of Professional Conduct for Attorneys provide ethical duties that a lawyer make reasonable efforts to expe-

dite litigation consistent with the interests of the client, SCR 20:3.2, repealed and recreated June 10, 1987, effective January 1, 1988, no one argues that a violation of this rule is intended to give rise to a civil cause of action for negligence. We also point out that the decision in this case does not resolve the issue of negligence that arises when an attorney approves a settlement for less than reasonable value of the claim. In that situation, the negligence is not the delay in settlement but the failure to use reasonable care to determine settlement value.

Lyle's proof of causation, a connection between Perina's delay and the injury, is largely an inference drawn from the fact that because the insurance company settled later, with proper effort it would have settled earlier. The effect of that inference on malpractice claims is that the temporary delay may be causal whenever the plaintiff's pain and suffering diminishes, or his injuries heal or a witness' memory fades. Lyle's own expert, Weisel, had some difficulty with the question of whether the evidence established the connection between the negligence and the likelihood of an earlier settlement. When first asked if he had an opinion to a reasonable degree of certainty whether in the handling of this case an attorney exercising ordinary care would have reached an earlier settlement, Weisel stated: "I have a problem with the word 'settlement,' . . . because it takes two people to do it." Weisel went on to indicate that the case should have been "resolved" within a year of Perina's taking the case. It must be noted that the jury was not asked whether Perina should have tried the case to a successful conclusion at an earlier date but merely whether he should have settled the case earlier.

With regard to damages, quite apart from the unavoidable fact that personal injury awards are never capable of determination with mathematical certainty, the

question of the prior settlement value of a claim enters an area even more esoteric. Economic and legal factors that influence an insurance company to settle a claim for a given sum requires a jury to reach its verdict largely upon the opinion of experts rather than its own common knowledge. Every insurance claim for personal injuries, as even Lyle's expert acknowledged, has a settlement range rather than a fixed certain value. Recovery for failing to settle a claim at an earlier date for more money thus opens the door to malpractice claims immeasurably wider and resting largely on evidence of an abstract and hypothetical nature.

In conclusion, it is the concern for the absence of a sensible or just stopping point as to each of the three elements of Lyle's cause of action, negligence, causation and damages, rather than any one element that invokes considerations of public policy. Because we reverse the award for the loss of a larger settlement, it is not necessary to address the issues of the award of yet an additional sum for the loss of use of the larger settlement, or Lyle's cross-claim concerning the deduction of an attorney fee from the verdict.

*By the Court.*—Judgment reversed.

CANE, P.J. *(dissenting).* I would conclude that (1) the evidence is sufficient to sustain the verdict finding a loss of a larger settlement; (2) public policy does not bar the claim; and (3) a legal malpractice verdict does not provide an exception to the general rule that pre-verdict interest is not allowed in this state; the award for loss of use of a settlement amounts to prohibited pre-verdict interest.

## SUFFICIENCY OF THE EVIDENCE AND EVIDEN-
## TIARY RULINGS

Perina does not directly challenge the jury's finding that his inaction was a form of negligence; rather, he argues that the evidence failed to prove that his negligence caused damage, in other words, that there was no basis to find that the farm machinery manufacturer, A.O. Smith, and its insurer would have settled the claim for more at an earlier date even if Perina had pursued the issue properly. In a legal malpractice action, the client has the burden of showing that the attorney's negligence caused injury. *Lewandowski v. Continental Cas. Ins. Co.,* 88 Wis. 2d 271, 277, 276 N.W.2d 284, 287 (1979). A jury verdict cannot stand on conjecture, unproved assumptions or mere possibilities. *Schwalbach v. Antigo Elec. & Gas,* 27 Wis. 2d 651, 655, 135 N.W.2d 263, 265 (1965). Perina points to the absence of any evidence from A.O. Smith's insurer indicating that it would have consented to a larger settlement.

However, the jury's conclusion that the insurance company would have voluntarily agreed to settle for a larger sum, implicit in their finding of causal negligence, is not mere conjecture. Attorney Robert Weisel rendered an expert opinion of the prior value of the case based in part on his experience as a former field claims adjuster, branch office manager and home officer supervisor for an insurance company; his extensive work as an attorney in insurance defense work; and his experience in trial of either side of negligence cases, both as a judge and an attorney. The expert opinion of an attorney is a basis upon which a jury may set the value of a claim. *See Milwaukee Auto. Mut. Ins. Co. v. National Farmers Union Prop. & Cas. Co.,* 23 Wis. 2d 662, 669, 128 N.W.2d 12, 15 (1964).

Credibility of witnesses and the weight to give to their testimony are left to the judgment of the jury, and where more than one reasonable inference can be drawn from the evidence, the reviewing court must accept the inference drawn by the jury. *Shawver v. Roberts Corp.,* 90 Wis. 2d 672, 681, 280 N.W.2d 226, 230 (1979). Here, the jury was entitled to infer from Weisel's testimony, coupled with the evidence of an ultimate settlement that, but for Perina's failure to file his lawsuit, conduct discovery and pursue settlement while the evidence was fresh, the insurance company would have acceded to a higher figure in 1982.

Perina also complains that the court did not use the usual "trial within a trial" method to establish the probable outcome had the case been properly handled. The trial procedure used in this case may be attributable to the fact that the underlying claim was ultimately settled and not tried. Our supreme court has stated:

> Regardless of the approach used to resolve the issue of liability and damages in a legal malpractice case the ultimate goal should be to determine what the outcome *should* have been if the issue had been properly presented in the first instance . . ..
>
> The general rule should be adapted to the facts of the particular case . . .. Situations can be readily conceived where it would be difficult to determine the value of an original action which could not be tried, but it is the duty of the courts to fashion a remedy as best they can.

*Lewandowski,* 88 Wis. 2d at 281, 276 N.W.2d at 289 (emphasis in original). This trial court fashioned an appropriate remedy to meet the circumstances presented.

Perina also argues that it was error to allow Weisel to express an opinion based upon his experience as a

former circuit judge because a jury is inclined to give undue weight to the opinion of a judge on the question of the reasonableness of a settlement in a lawsuit. Perina cites *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 362 N.W.2d 118 (1985). Perina's challenge was not raised in the trial court and was therefore not preserved as an issue on appeal. *See Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140, 145–46 (1979). However, even had the issue been raised, *Helmbrecht* is not on point. The concern in *Helmbrecht* arose in an entirely different context. The jury was called upon in a legal malpractice action to assess the reasonableness of the settlement in an earlier divorce action. The attorney at trial called the judge who had presided over the divorce proceedings to testify to what he would have done had the case not been settled. The *Helmbrecht* court rejected the use of the divorce judge's testimony for two reasons: First, such a practice could force the judge as a witness for one of the original parties to have to defend his own actions in the original suit, thereby raising the potential for the appearance that the judge had not been impartial; second, the question for the malpractice jury is what a reasonable judge in a bench trial would have awarded, not what a particular judge would have done. *Id.* at 105–06, 362 N.W.2d at 125. In contrast, Weisel had no connection with the former proceedings in any capacity, and his opinion was properly phrased in terms of a reasonable value, not the value he would have set as the presiding judge.

Perina next argues that the court erred by excluding evidence that part of the structured settlement of $1,036,236 belonged not to Lyle but to his parents. The structured settlement included the purchase of an annuity that paid the sum of $1,500 per month to Lyle's mother until he reached the age of eighteen to be used

for his care and treatment. While tort law permits a parent to claim expenses for care and treatment of an injured minor child, all of the parties to the original lawsuit, including the parents, treated the annuity as part of Lyle's settlement because the funds were to be used for his benefit. Lyle's attorney fee was calculated in part on the basis that the award belonged to Lyle. The parents ultimately withdrew any claim against Perina for their losses. This amounted to a stipulation that the settlement belonged to Lyle to be administered through his mother. The court did not abuse its discretion by excluding reference to this fact to the jury. The court noted that the evidence would open a whole line of inquiry with respect to the nature of structured settlements causing undue delay and confusion. This court will not set aside a trial court's ruling on admission of evidence where it has properly stated the reasons for its discretionary decision in a situation where the exercise of discretion is appropriate. *Featherly v. Continental Ins. Co.,* 73 Wis. 2d 273, 282, 243 N.W.2d 806, 813 (1976).

## PUBLIC POLICY CONSIDERATIONS

Perina next argues, and the majority agrees, that even if the plaintiff established causal negligence, public policy dictates that the claim be rejected. I disagree. Generally, liability will follow a proper finding of causal negligence:

> However, negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that the defendant is liable for the plaintiff's injuries. The determination to not impose liability in instances where a negligent act has been committed and the act is a 'substantial fac-

tor' in causing the injury rests upon considerations of
public policy.

*Coffey v. City of Milwaukee,* 74 Wis. 2d 526, 541, 247
N.W.2d 132, 140 (1976) (citations omitted).

The majority correctly states that our supreme
court has held that even where the chain of causation is
complete and direct, recovery may be denied if: (1) The
injury is too remote from the negligence; (2) the injury is
too wholly out of proportion to the tort-feasor's culpabil-
ity; (3) in retrospect it appears too highly extraordinary
that the negligence should have brought about the harm;
(4) because allowance of recovery would place too unrea-
sonable a burden on the negligent tortfeasor; (5) because
allowance of recovery would be too likely to open the way
for fraudulent claims; or (6) allowance of recovery would
enter a field that has no sensible or just stopping point.
*Id.* The cases in which a causally negligent tortfeasor is
relieved of liability are infrequent and present unusual
and extreme considerations. *Stewart v. Wulf,* 85 Wis. 2d
461, 479, 271 N.W.2d 79, 88 (1978).

I also agree that among the various criteria set forth,
only (6), the absence of a sensible or just stopping point,
has application here. In respect to that criterion, the
parties dispute the applicability of this court's holding in
*Bolte v. Joy,* 150 Wis. 2d 744, 443 N.W.2d 23 (Ct. App.
1989), to the present circumstances. In *Bolte,* this court
approved the trial court's dismissal of a legal malpractice
action on policy grounds. In that case, the client, Bolte,
had sued his fire insurer, but a jury found that the client
had set the fire himself. When a new trial was ordered,
the insurer settled the client's claim. The client then
sued his attorney, alleging negligence in failing to dis-
cover in the process of trial preparation that an eyewit-
ness had given a description of the arsonist that
excluded the client from suspicion. The client thus

901

sought damages from his attorney for loss of business and professional reputation, and for mental anguish from the bad publicity engendered from the news stories about the trial and jury verdict. This court dismissed the claim and adopted the trial court's rationale:

> If a party is permitted to sue his trial attorney for consequential damages even though he has received the remedy originally sought in the action, no legal check would remain on claims against trial lawyers by their clients. In a highly publicized case, one can imagine mental anguish or consequential damage claims based on counsel's failure to ask a question, failure to object to a question, failure to convince a judge that an objection was proper, failure to prevail on a motion *in limine* as to certain evidence . . . the list could go on and on.

*Id.* at 250–51, 443 N.W.2d at 25–26. *Bolte* is easily distinguished on its facts. The client there "received the remedy originally sought," here he did not; the client there sought consequential damages arising out of the manner in which the desired result was reached, the client here seeks only the original result to which he was entitled from the start.

It is possible to hypothesize future malpractice actions arising out of attorneys' delay in settling claims where a much shorter delay is involved than was the case here, thereby subjecting attorneys to malpractice actions where there is no just or sensible stopping point. The negligence and causation found here, however, is not so unusual that we should invoke the drastic remedy of public policy to set aside the jury verdict and bar the claim. I recognize the majority's concern, but whether the delay was unreasonable can be determined through the inquiry of whether such action was causally negligent. We have not hesitated to impose a similar burden

on the medical profession to act timely in order to avoid injury, and I see no reason to make an exception for the legal profession.

## LOSS OF USE OF SETTLEMENT FUNDS

The jury awarded Lyle the sum of $406,000 for the loss of use of the larger settlement figure of $1,270,000 for the three years that Perina negligently failed to pursue the matter. Pre-verdict interest reflects the value of the use of money. *Anderson v. LIRC,* 111 Wis. 2d 245, 259, 330 N.W.2d 594, 601 (1983). The witness testified to the amount of simple interest a specified sum would have earned for the years 1983, 1984 and 1985 if invested in certificates of deposit or United States treasury notes. Our supreme court has consistently, but certainly not unanimously, adhered to the general rule that pre-verdict interest is recoverable only on damages that are either liquidated or liquidable. *Johnson v. Pearson Agri-Systems,* 119 Wis. 2d 766, 783-87, 350 N.W.2d 127, 136-37 (1984) (Callow, J., Abrahamson, J. and Heffernan, C.J., dissenting). Justice Bablitch concurring with the majority stated:

> The economics of the issues presented in this case have not been adequately explored by the parties, and may well be more appropriately addressed by the legislature. However, should the legislature fail to address the problems and issues raised in the dissent, I believe this court may have to address these issues again in an appropriate case.[1]

---

[1] The court in *Johnson* uses the term "pre-verdict" interest rather than the term "pre-judgment" interest because sec. 814.04 (4), Stats., provides for interest from the time of the verdict until judgment is entered and thus is "pre-judgment" interest. *Id.* at 768 n.1, 350 N.W.2d at 129 n.1.

*Id.* at 783, 350 N.W.2d at 136. This court is bound by prior decisions of the supreme court. *State v. Quiroz,* 149 Wis. 2d 691, 695, 439 N.W.2d 621, 623 (Ct. App. 1989).

Lyle cites a decision of this court, *Glamann v. St. Paul Fire & Marine Ins. Co.,* 140 Wis. 2d 640, 412 N.W.2d 522 (Ct. App. 1987), *overruled on other grounds,* 144 Wis. 2d 865, 424 N.W.2d 924 (1988), for the proposition that in a legal malpractice action the general rule does not apply because the action is against a third party whose negligence delayed recovery of damages from the original tort-feasor. *Glamann,* however, grounded the award of pre-verdict interest on the unique legislative purposes of the Wisconsin Fair Employment Act (WFEA). *Id.* at 657–58, 412 N.W.2d at 529. *Glamann* relied upon *Anderson v. LIRC,* 111 Wis. 2d 245, 258–59, 330 N.W.2d 594, 601 (1983), wherein it was held that an award of pre-verdict interest in WFEA cases is consistent both with the federal law after which the Wisconsin Act is patterned and with the general rule that lost wages under the Act is a liquidable claim.

The tort damages in this case were neither liquidated nor liquidable damages, and I defer to the supreme court as to whether this case presents a proper vehicle to change the present rule against pre-verdict interest. [2] I would observe as a matter of discussion that Wisconsin has long recognized an exception to the American rule barring the award of reasonable attorney fees where wrongful acts of a defendant place a plaintiff in such a relation with a third party as to make it necessary to incur expenses to protect the plaintiff's interests. *Weinhagen v. Hayes,* 179 Wis. 62, 65, 190 N.W.1002,

---

[2] This court has stated on at least one prior occasion, in dictum, that pre-verdict interest was not appropriate in a legal malpractice action in *Burns v. Geres,* 140 Wis. 2d 197, 202–04, 409 N.W.2d 428, 431–32 (Ct. App. 1987).

1003 (1922). Arguably, the rationale underlying the *Weinhagen* rule is applicable to the award of pre-verdict interest here. The negligent attorney has placed the plaintiff in the position of having to relitigate the original claim in order to protect his interests. Because the rule against pre-verdict interest is well established, however, any modification to the rule must come from the supreme court.

Because I would reverse the loss of use award, it is not necessary to address Lyle's cross-appeal challenging the deduction of an attorney fee from that award.[3] Finally, Perina's challenges to the jury instructions were not raised in the trial court and cannot be raised on appeal. *See Air Wisconsin v. North Central Airlines,* 98 Wis. 2d 301, 311, 296 N.W.2d 749, 753 (1980).

In conclusion, I would affirm the judgment awarding damages for the lost larger settlement. I would reverse that portion of the judgment allowing an award for loss of use of the larger settlement.

---

[3] I note that neither party questions the deduction of the attorney fee from the loss of use award rather than from the award for the lost settlement. It would appear that if a fee is to be deducted from the client's damage award, it would come from the amount the case should have settled for and not from the amount awarded for loss of use of that award. In any case, the parties have not raised this issue and it is not preserved for appeal.