Judy Lynn ANDERSON, Petitioner-Appellant and Cross-Respondent,

v.

State of Wisconsin LABOR & INDUSTRY REVIEW COMMISSION, Respondent and Cross-Appellant.

Supreme Court

*No. 81–1911. Argued February 2, 1983.—Decided March 1, 1983.*

(Also reported in 330 N.W.2d 594.)

For the appellant and cross-respondent there were briefs by *Ilene L. Dick* and *Mitchell & Noonan, S.C.,* and oral argument by *Daniel A. Noonan,* all of Milwaukee.

For the respondent and cross-appellant the cause was argued by *David C. Rice,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J. Judy Lynn Anderson filed a complaint with the Department of Industry, Labor and Human Relations (hereinafter the department), alleging that her former employer, Diel Container Corporation (hereinafter Diel), discriminated against her on the basis of sex when it terminated her employment, in violation of Wisconsin's Fair Employment Act.[1]

---

[1] Sections 111.31–111.37, Stats. (1973). The Wisconsin Fair Employment Act provides in pertinent part as follows:

"111.31 **Declaration of policy.** (1) The practice of denying employment and other opportunities to, and discriminating against, properly qualified persons by reason of their age, race, creed, color, handicap, sex, national origin or ancestry, is likely to foment domestic strife and unrest, and substantially and adversely affect the general welfare of a state by depriving it of the fullest utilization of its capacities for production. The denial by some employers, licensing agencies and labor unions of employment opportunities to such persons solely because of their age, race, creed, color, handicap, sex, national origin or ancestry, and discrimination against them in employment, tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living, thereby committing grave injury to them.

"(2) It is believed by many students of the problem that protection by law of the rights of all people to obtain gainful employment, and other privileges free from discrimination because of age, race, creed, color, handicap, sex, national origin or ancestry, would remove certain recognized sources of strife and unrest, and encourage the full utilization of the productive resources of the

The court of appeals certified Anderson's appeal and Diel's cross-appeal to this court. The question of whether there was unlawful discrimination was resolved against Diel and is not an issue on this appeal. The following three issues are presented: (1) Should the Wisconsin Fair Employment Act be interpreted to allow a valid

state to the benefit of the state, the family and to all the people of the state.

"(3) In the interpretation and application of this subchapter, and otherwise, it is declared to be the public policy of the state to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, sex, national origin or ancestry. This subchapter shall be liberally construed for the accomplishment of this purpose."

"111.325 **Unlawful to discriminate.** It is unlawful for any employer, labor organization, licensing agency or person to discriminate against any employe or any applicant for employment or licensing."

"111.36 **Powers of department.** . .

"(3) . . .

"(b) If, after hearing, the department finds that the respondent has engaged in discrimination, it shall make written findings and order such action by the respondent as will effectuate the purpose of this subchapter, with or without back pay. Back pay liability shall not accrue from a date more than 2 years prior to the filing of a complaint with the department. Interim earnings or amounts earnable with reasonable diligence by the person discriminated against shall operate to reduce back pay otherwise allowable. Amounts received by the person discriminated against as unemployment benefits or welfare payments shall not reduce the back pay otherwise allowable, but shall be withheld from the person discriminated against and immediately paid to the unemployment reserve fund or, in the case of a welfare payment, to the welfare agency making such payment."

Since the time of this action, there have been some minor changes in numbering and language in secs. 111.31–111.37, Stats. However, the current version of the Wisconsin Fair Employment Act is substantially the same as the 1973 version, and the outcome of this case would not be any different had it occurred several years later.

offer of reinstatement to terminate the accrual of back pay as of the date the offer is rejected; (2) if a valid offer of reinstatement does terminate the accrual of back pay, did Diel's offer to Anderson constitute such an offer; and (3) may an award for back pay be adjusted to reflect its present value or to include interest?

The circuit court of Washington county upheld the Labor and Industry Review Commission's finding that Diel made a valid offer of reinstatement to Anderson and that this offer tolled Diel's liability for back pay. The court disagreed with the commission's determination that the Act did not allow it to award prejudgment interest on back pay awards. It held that an award of interest or an increase to reflect present value is discretionary with the commission, and it therefore ordered the cause remanded to the commission for a determination of the specific amount to be paid by Diel.

We hold that a valid offer of reinstatement by an employer terminates the accrual of back pay, but that the offer in the instant case was not sufficient. We also hold that although the Fair Employment Act does not expressly provide for prejudgment interest on back pay awards, prejudgment interest should be included in such awards, since its inclusion is necessary to carry out the purpose of the Act. Therefore, we reverse and remand to the circuit court, with directions to remand to the commission to determine the amount of the award in accordance with this opinion.

Judy Lynn Anderson began her employment with Diel Container Corporation on November 5, 1973. She was employed for general factory work. Her duties included folding cardboard cartons, press work, taping cartons and sweeping floors. On January 7, 1974, her supervisor told her that she was being laid off because of an economic cutback. However, at the time of the layoff, a position as a "baler" was open, and two men who

had slightly less seniority than Anderson were retained to work as balers. According to Anderson, her supervisor told her that she was being laid off because she was the last female hired.

On January 15, 1974, Anderson filed a complaint against Diel with the department, alleging that she was discharged on account of her sex, while male employees with less seniority were retained. On March 24, 1977, the department's hearing examiner issued his findings of fact and conclusions of law, concluding that Anderson had indeed been laid off in favor of two male employees with less seniority, in violation of the Wisconsin Fair Employment Act. The commission adopted the examiner's proposed decision and ordered Diel to reinstate Anderson "forthwith" and to pay her "all back pay less any unemployment compensation or welfare benefits or earnings [of Anderson]."

Diel appealed to the circuit court of Dane county, contending that the examiner did not conduct a fair and impartial hearing and that the commission's decision was not based on substantial evidence. The circuit court affirmed that part of the commission's decision which held that Diel had unlawfully discriminated against Anderson, but agreed with Diel that the commission's order regarding monetary relief was vague and ambiguous. It therefore remanded the case to the commission to determine the specific amount of back pay due, less any unemployment compensation, welfare benefits or earnings received by Anderson.

Pursuant to the circuit court's order, the department held hearings in August and October, 1979, to determine the specific back pay due Anderson. The testimony of an economist (as an expert witness) and Howard Healy, a former investigator with the department, was taken. For the first time in the action, the question of whether Diel had made an offer of reinstate-

ment to Anderson was addressed.[2] Healy's investigation report of August 9, 1974, was admitted into evidence. The report indicated that a position as a baler was available at the time Anderson was laid off. Anderson had alleged in her complaint that she offered to take the baler position, but that Diel denied her request for the job. According to Healy's report, Diel continued to take the position that a woman could not handle the job because the work was too heavy. Healy concluded from his investigation that a woman could perform the baling work. Healy also noted in his report that on March 27, 1974, Diel, "through the investigator [Healy], offered Complainant [Anderson] the baler job. She refused because she was employed elsewhere."

Healy's deposition was taken on October 24, 1979. His testimony regarding his report indicated that he had no independent recollection of offering the baler position to Anderson, nor could he remember whether the offer was authorized and unconditional. Diel did not offer any independent evidence regarding the nature of the offer or whether it was unconditional or authorized.[3]

---

[2] Anderson continues to argue that the order of the Dane county circuit court in the original review of this case was *res judicata* on all issues except the amount of offset for mitigation and that the commission exceeded its authority on remand by considering the issue of the reinstatement offer. The Washington county circuit court, in the second review, noted that the original remand to the commission was basically an issue of damages and, thus, the issue was properly raised. We agree with this reasoning.

[3] In his decision, the examiner stated:

". . . Respondent did not offer any information or testimony whatsoever as to who made the offer, whether it was bona fide, and, most importantly, whether it was unconditional. What can be determined regarding the offer, if it was made, is that it was not communicated directly to Complainant by Respondent and it was not unconditional.

"Such an offer of reinstatement must be established as part of the proof of Respondent. Therefore, Respondent has the burden

In his decision of April 15, 1980, the hearing examiner made several findings of fact, including the findings that "[Diel] did not unconditionally offer [Anderson] reinstatement on or about March 27, 1974 so as to stop back pay from accruing" and that "[Anderson], to September 30, 1979, has suffered a loss [of] $30,928.68 as a result of [Diel's] discrimination." This figure represented Anderson's lost wages increased to present value,[4] less the amounts she earned from other employment.[5] Accordingly, the examiner ordered Diel to pay Anderson $30,928.68 for lost wages and earnings through September 30, 1979, and further ordered that the back pay continue to accrue until the order became final by the exhaustion of all appeals or until Diel, in good faith, offered Anderson unconditional reinstatement to a position equivalent in pay to that which she originally held.

Diel petitioned the commision for review of the examiner's decision and order. The commission's decision

of proving such an offer since it stands to gain by its proof. Respondent did not introduce the testimony of anyone who would have made the offer, but rather testimony of the investigator who, even shown his original investigator's report, could not describe or recollect any details of the offer whatsoever. I am persuaded by Complainant's argument that the Respondent utterly failed to meet any burden it had of establishing the existence of the offer. What would have been needed as a factual matter is the offer, who made it, the date it was made, the job which was offered, rate of pay, and the absence of any conditions attached to accepting it. None of this exists in this record."

[4] The expert testimony of the economist regarding the present value of the earnings was accepted by the examiner. The determination of back pay was based upon an examination of the actual earning experience of Diel employees who worked there when Anderson did.

[5] The examiner found that Anderson had not received welfare or unemployment compensation benefits for the period from January 8, 1974, to September 30, 1979.

of December 19, 1980, reversed the examiner's findings on two important questions. First, the commission found that Diel made a valid offer to reinstate Anderson as a baler on March 27, 1974. The commission emphasized that although the investigator had no independent recollection of any offer of reinstatement, he testified he was certain that everything he wrote in the report was true. The commission reasoned that it could not be held that Diel's offer was not unconditional when Anderson summarily rejected the job because she was employed elsewhere and no longer wanted to work for Diel. Therefore, it concluded that Anderson's rejection of the job offer terminated Diel's liability for back pay on March 27, 1974. Second, the commission determined that the Fair Employment Act did not provide for "prejudgment interest" on back pay awards. Accordingly, the commission limited Anderson's recovery to back pay from the date of the layoff through March 26, 1974, at a rate of $2.25 per hour, plus overtime pay based on the average weekly overtime hours then worked by all general laborers, together with the dollar equivalent she would have received as fringe benefits.

Anderson filed a petition for judicial review with the circuit court of Washington county. The court first held that the issue of whether a valid offer of reinstatement had been made by Diel was properly before the commission. The circuit court next determined that there was substantial evidence to support the commission's finding that Anderson rejected a valid offer of reinstatement on March 27, 1974. Finally, the court disagreed with the commission's conclusion that it had no authority to award prejudgment interest. The court held that prejudgment interest is a legal and equitable principle that can be applied by the commission to add to awards to employees in cases such as this one and that under federal law, the decision whether to award prejudgment

interest is within the discretion of the commission. Therefore, the court concluded that the question of prejudgment interest must be remanded to the commission for determination of the specific amount to be paid by the employer.

Anderson appealed from that part of the judgment affirming the commission's back pay award. The commission cross-appealed from that part of the judgment reversing the commission's denial of prejudgment interest and remanding the case to the commission to determine the specific amount to be paid by Diel. This court accepted the certification from the court of appeals.

I.

## OFFER OF REINSTATEMENT

The first issue presented is whether the Wisconsin Fair Employment Act should be interpreted to allow a valid offer of reinstatement to terminate an employer's back pay obligation as of the date the offer is rejected. The commission concluded that such an offer can terminate the accrual of back pay. Although the reviewing court is not bound by the commission's interpretation of the Act (a conclusion of law), such interpretation will be affirmed if a rational basis for it exists. *Dairy Equipment Co. v. ILHR Dept.*, 95 Wis. 2d 319, 327, 290 N.W.2d 330 (1980). Questions of law such as statutory construction are reviewable *ab initio* by this court and are properly subject to judicial substitution of judgment. *American Motors Corp. v. ILHR Dept.*, 101 Wis. 2d 337, 353–54, 305 N.W.2d 62 (1981).

Section 111.36(3)(b), Stats. 1973, provides that "amounts earnable with reasonable diligence by the person discriminated against shall operate to reduce back pay otherwise allowable." It seems logical that the prin-

ciple of mitigation of wages lost would embody an offer of reinstatement as well as the acceptance of other employment. However, the Fair Employment Act does not contain a specific provision to this effect, and Wisconsin cases have not directly addressed the issue. Therefore, it is appropriate to consider federal decisions under Title VII of the federal Civil Rights Act, 42 U.S.C. sec. 2000e, *et seq.*, for guidance in interpreting and applying the Wisconsin Far Employment Act. *Bucyrus-Erie Co. v. ILHR Dept.*, 90 Wis. 2d 408, 421 n. 6, 280 N.W.2d 142 (1979).

Under federal law, a valid offer of reinstatement terminates the accrual of the employer's back pay obligation. *Cofield v. Goldman, Sachs & Company*, 364 F. Supp. 1372 (S.D. N.Y. 1973); *N.L.R.B. v. Huntington Hospital, Inc.*, 550 F.2d 921, 924 (4th Cir. 1977). We feel that such a rule is sound and is consistent with the language of sec. 111.36(3)(b), Stats. 1973. We therefore adopt the rule that a valid offer of reinstatement ends the accrual of back pay. The question of what constitutes a valid offer is unresolved in Wisconsin.

Having concluded that a valid offer of reinstatement ends the accrual of back pay as of the date the offer is rejected or accepted by the former employee, we next address the question of whether Diel's offer of March 27, 1974, to Anderson was sufficient to terminate Diel's back pay obligation. When weighing the merits of the different interpretations of the Act advanced by the parties, the purpose of the Act must be kept in mind. That purpose, which is stated in the Act itself, is

"to encourage and foster to the fullest extent practicable the employment of all properly qualified persons regardless of their age, race, creed, color, handicap, sex, national origin or ancestry. *This subchapter shall be liberally construed for the accomplishment of this purpose.*" Section 111.31(3), Stats. 1973. (Emphasis added.)

The Fair Employment Act is designed to prevent discrimination which "tends to deprive the victims of the earnings which are necessary to maintain a just and decent standard of living. . . ." Section 111.31(1) Stats. 1973.[6]

Under federal law, the burden of proving a failure to mitigate damages in an employment discrimination suit is on the employer. *Sprogis v. United Air Lines, Inc.*, 517 F.2d 387, 392 (7th Cir. 1975); *Kaplan v. Intern. Alliance of Theatrical, Etc.*, 525 F.2d 1354, 1363 (9th Cir. 1975); *Sias v. City Demonstration Agency*, 588 F.2d 692, 696 (9th Cir. 1978).[7] Also, under Title VII, whether back pay continues to accrue after an offer of reinstatement has been made depends upon "the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal." *Claiborne v. Illinois Cent. R.R.*, 583 F.2d 143, 153 (5th Cir. 1978).

It is apparent to this court that a requirement that an offer of reinstatement be specific and unconditional would inure to the benefit of both employers and their employees. A discharged employee should be encouraged to accept reinstatement; an equivocal, unclear offer by the employer would not accomplish this end. Addition-

---

[6] *See,* Comment, *Wisconsin's Fair Employment Act: Coverage, Procedures, Substance, Remedies,* 1975 Wis. L. Rev. 696.

[7] The court in *Sias* went on to explain that to satisfy its burden an employer must establish "(1) that the damage suffered by plaintiff could have been avoided, *i.e.* that there were suitable positions available which plaintiff could have discovered and for which he was qualified; and (2) that plaintiff failed to use reasonable care and diligence in seeking such a position. *See Kaplan v. Intern. Alliance of Theatrical, etc., supra,* 525 F.2d at 1363; *Sparks v. Griffin,* 460 F.2d 433, 443 (5th Cir. 1972); *Hegler v. Board of Ed. of Bearden School District, Bearden, Ark.,* 447 F.2d 1078, 1081 (8th Cir. 1971); *E.E.O.C. v. Kallir, Philips, Ross, Inc.,* 420 F. Supp. 919, 926 (S.D. N.Y. 1976), *aff'd.,* 559 F.2d 1203 (2nd Cir. 1977)." 588 F.2d at 696-97.

ally, employers should be able to determine what their responsibilities are in this situation. Therefore, we feel it is necessary to set forth guidelines in this area.

First, the offer of reinstatement must be for the same position or a substantially equivalent position. Comparability in salary should not be the sole test of a reasonable offer of alternative employment; it is only one factor to be considered. Comparability in status is often more important, especially as it relates to opportunities for advancement or for other employment. *Williams v. Albemarle City Board of Education,* 508 F.2d 1242, 1243 (4th Cir. 1974).[8]

"Accordingly, a discharged or demoted employee is not required in mitigation of damages, to accept alternative employment of an 'inferior kind,' or of a more 'menial nature,' or employment outside of his usual type or for which he is not sufficiently qualified by experience, or employment the inferiority of which might injuriously affect the employee's future career or reputation in his profession." *Id.* (Footnote omitted.)

Second, the offer of reinstatement must be unconditional. Any requirements attached to the offer must be the usual job requirements. *See, N.L.R.B. v. Huntington Hospital, Inc.,* 550 F.2d at 924.

Third, the employee must be afforded a reasonable time to respond to the offer of reinstatement. The employee then has the responsibility of informing his employer of his intentions concerning reinstatement within the stated reasonable time after he receives notice of the offer. *N.L.R.B. v. Betts Baking Company,* 428 F.2d 156, 158 (10th Cir. 1970). Whether the time allowed is reasonable will depend on the totality of the circumstances surrounding the making of the offer and the em-

---

[8] *See,* cases collected in Annot., 44 A.L.R.3d 629 at 641, 644, 646 and 651.

ployee's response thereto. *Id.; N.L.R.B. v. Izzi*, 395 F.2d 241 (1st Cir. 1968).

Finally, the offer should come directly from the employer or its agent who is authorized to hire and fire, rather than from another employee or other unauthorized individual. This requirement, we believe, will further facilitate the goal of giving the employee a clear, definite offer which he would not reasonably hesitate to accept.

In the case before us, the commission found that Anderson rejected a valid offer of reinstatement by Diel on March 27, 1974. Under ch. 227, Stats., an administrative agency's findings of fact are conclusive if supported by substantial evidence in the record. *Chicago, M., St. P. & P. RR Co. v. ILHR Dept.*, 62 Wis. 2d 392, 396, 215 N.W.2d 443 (1974). The only evidence of any offer of reinstatement by Diel is the statement in the investigator's report that Diel, through Healy, offered Anderson the baler job on March 27, 1974. Although this may be substantial evidence to support a finding that an offer was in fact made, there was not substantial evidence to show that there was a valid offer. As Anderson has pointed out, the report did not show that the new job being offered to her would be a position "substantially equivalent" to her former job. There was no evidence that Diel gave Anderson a reasonable time in which to accept or reject the offer. The offer was not communicated to Anderson by her employer, and Healy, the department investigator, was not authorized under ch. 111 to act as an agent of Diel.

The commission stated that the offer was unconditional, unpersuasively explaining, "it cannot be held that [Diel's] job offer was not unconditional, when as here, Complainant summarily rejected the job because she

was employed elsewhere and no longer wanted to work for [Diel]." We cannot agree with the circuit court that the statement in the investigator's report constitutes substantial evidence to support the commission's finding. As we have previously noted, that statement is bereft of many significant facts regarding Diel's offer of reinstatement to Anderson, and Diel, as the employer, has the burden of showing that a valid offer was made. Therefore, we cannot accept the commission's finding that Diel made a valid offer of reinstatement to Anderson.

## II.

### PREJUDGMENT INTEREST

The remaining issue is whether prejudgment interest on a back pay award should be allowed. The commission did not award interest on the award of back pay, nor did it increase the amount of the award to reflect its present value. The commission explained:

"The Act makes no provision for awarding a complainant the difference in the net worth of back pay between the date such back pay is actually received and the date such amount would have been received absent the unlawful discrimination."

The circuit court held that such an adjustment was discretionary and remanded the case to the commission for a determination as to interest. We agree with the circuit court that the commission has the authority to award prejudgment interest, and we further hold that such interest should be part of a back pay award in an employment discrimination case.

Prejudgment interest on back pay awards has been accepted as an appropriate remedy under federal law.

Although Title VII of the federal Civil Rights Act, like the Wisconsin Fair Employment Act, permits an award of back pay but does not expressly provide for interest on back pay awards, federal cases interpreting that legislative enactment have approved the practice of making such additional awards.[9]

"In order to make the injured party whole, prejudgment interest should be assessed on back pay awards. This ruling recognizes the basic economic concept of the time value of money, and the assessment is not prohibited by the federal interest statute, 28 U.S.C. § 1961. *Illinois Central R. R. Co. v. Texas Eastern Transmission Co.*, 551 F.2d 943, 944 (5th Cir. 1977). Accordingly, the court awards interest from the respective date of each instance of lost wages, . . . until paid, at a rate of seven per cent (7%) per annum."

*Crawford v. Roadway Exp., Inc.*, 485 F. Supp. 914, 925 (W.D. La. 1980); *Isis Plumbing & Heating Co.*, 138 NLRB 716, 719–20 (1962), *rev'd* on other grounds, 322 F.2d 913 (9th Cir. 1963).

Our holding today, like the federal decisions, is based on the rationale that the person discriminated against should be "made whole." Moreover, a stated policy behind the Act is to discourage discriminatory practices in the employment area. Section 111.31(3), Stats. 1973. We agree with Anderson's argument that an employer who discriminates and delays compliance with orders awarding back pay should not be rewarded for its delay by escaping the application of the basic concept of the "time value of money."

[9] However, Title VII has not been construed to permit the increase of a back pay award by an inflation factor. *See, E.E.O.C. (U.S.A.) v. Pacific Press Pub. Ass'n*, 482 F. Supp. 1291, 1319 (N.D. Calif. 1979). We choose the alternative of awarding prejudgment interest, rather than increasing the award to present value, because the calculation of prejudgment interest is far less complicated and would not require expert testimony.

Our holding that back pay awards may be increased to carry an accrual of prejudgment interest is consistent with the rules for awarding prejudgment interest in Wisconsin. As we noted in *Nelson v. Travelers Ins. Co.*, 102 Wis. 2d 159, 167–68, 306 N.W.2d 71 (1981), prejudgment interest may be recoverable where the amount due, though not truly liquidated, is capable of determination by application of some fixed standard. *See also, Wyandotte Chemicals Corp. v. Royal Electric Mfg.*, 66 Wis. 2d 577, 581–86, 225 N.W.2d 648 (1975); *City of Merrill v. Wenzel Brothers, Inc.*, 88 Wis. 2d 676, 697, 277 N.W.2d 799 (1979). As under federal law, the prejudgment interest obligation is not viewed as an additional penalty for the wrong, but is viewed simply as the value of the use of the money. *Nelson,* 102 Wis. 2d at 169.

Finally, as the commission concedes, the Wisconsin Fair Employment Act is to be liberally construed to accomplish its purpose. Section 111.31(3), Stats. 1973; *Wisconsin Telephone Co. v. ILHR Dept.*, 68 Wis. 2d 345, 368, 228 N.W.2d 649 (1975). Therefore, we hold that the commission has the authority to, and should, increase back pay awards under the Wisconsin Fair Employment Act to reflect the accrual of prejudgment interest at a rate of seven per cent per annum.

Since we have held that Diel's offer of reinstatement was not sufficient to terminate the accrual of back pay, the interest rate of seven per cent shall be applied to Anderson's back pay award which has accrued from the date of her discriminatory discharge until Diel makes a valid offer of reinstatement or until all appeals from the order are final. Therefore, we reverse and remand to the circuit court, with directions to remand to the commission for the determination, in accordance with

this opinion, of the award due Anderson from her former employer.

*By the Court.*—The judgment of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.