BOARD OF REGENTS OF the UNIVERSITY OF WISCONSIN SYSTEM, Petitioner-Appellant-Cross Respondent,

v.

WISCONSIN PERSONNEL COMMISSION, Respondent-Cross-Respondent,

Rosann HOLLINGER, Cross Petitioner-Respondent-Cross Appellant.†

Court of Appeals

*No. 87–2371. Submitted on briefs August 2, 1988.—Decided November 3, 1988.*

(Also reported in 433 N.W.2d 273.)

† Petition to review denied. ABRAHAMSON and BABLITCH, JJ., took no part.

For the petitioner-appellant-cross respondent the cause was submitted on the briefs of *Donald J. Hanaway*, attorney general, and *Arleen E. Michor*, assistant attorney general.

For the respondent-cross-respondent the cause was submitted on the briefs of *Richard V. Graylow* and *Lawton & Cates, S.C.*, of Madison.

For the cross petitioner-respondent-cross appellant the cause was submitted on the briefs of *John S. Williamson, Jr.*, of Appleton.

Before Dykman, Eich and Sundby, JJ.

DYKMAN, J.   The Board of Regents appeals and Rosann Hollinger cross-appeals from a judgment affirming an order of the Wisconsin Personnel Commission. On appeal, the issue is whether the commission abused its discretion by increasing Hollinger's sec. 230.85(3)(a)4,[1] Stats., attorney fee award by twenty percent. On cross-appeal, the issue is whether the commission's finding that Hollinger had no valid grounds to reject the Board of Regent's reinstatement offer is clearly erroneous. We conclude: (1) that the commission abused its discretion by increasing Hollinger's attorney fee award by twenty percent; and (2) that the commission's finding that Hollinger had no valid reason to refuse the Board of Regent's reinstatement offer is not clearly erroneous. Therefore we affirm in part, reverse in part and remand with instructions.

## FACTS

Rosann Hollinger was employed from October 1980 to June 1984 as a teacher at the University of Wisconsin-Milwaukee (UW) in its High School Equivalency Program. On June 5, 1984, Hollinger filed a complaint with the commission alleging that her supervisor was retaliating against her because of her support of another staff member who apparently was

---

[1]Section 230.85(3)(a), Stats., provides in part:

In addition, the commission may take any other appropriate action, including but not limited to the following:

. . . .

4.   Order payment of the employe's reasonable attorney fees by a governmental unit respondent, or by a governmental unit employing a respondent who is a natural person if that governmental unit received notice and an opportunity to participate in proceedings before the commission.

a "whistleblower."[2] Hollinger's contract was not renewed after it ended on June 30, 1984. The commission concluded, based partly on the non-renewal of Hollinger's contract, that there was probable cause to believe that the UW had retaliated against her.

In May 1985, Hollinger contracted with a different school to teach from August 15, 1985 to June 15, 1986. On the day before she began teaching at that school, she applied for yet another teaching position. On September 13, 1985, the UW made Hollinger an unconditional offer of reinstatement as of September 30, 1985. Hollinger refused this offer. The UW conceded that it would dispute only the amount of reasonable attorney fees, the amount of employee compensation or other related damages, and costs. After a hearing, the commission found that Hollinger's refusal to accept reinstatement was unjustified. The commission also concluded that a reasonable amount for attorney fees was $3,465. The commission then adjusted this "base fee" by a "multiplier" of 1.2, which resulted in an attorney fee award of $4,158, which the commission later increased to $4,686.[3]

---

[2]Subchapter III of ch. 230, entitled "Employee Protection," was created by sec. 9, 1983 Wis. Act 409, effective May 11, 1984. Part of the purpose of the act was to encourage "employe disclosure of improper activities in governmental units" and to prohibit retaliation because of such disclosure. Preamble to 1983 Wis. Act 409. The commission refers to this as the "whistleblower" law.

[3]The commission added "an additional $528.00, representing 4.0 hours at $110 per hour and a multiplier of 1.2 for time spent after the proposed decision was issued."

## STANDARD OF REVIEW

In reviewing an agency decision under ch. 227, Stats., our scope of review is the same as the trial court's. *Eau Claire County v. WERC,* 122 Wis. 2d 363, 365, 362 N.W.2d 429, 430 (Ct. App. 1984). An agency's findings of fact are conclusive if supported by substantial evidence in the record. *Gilbert v. Medical Examining Board,* 119 Wis. 2d 168, 195, 349 N.W.2d 68, 80 (1984). The commission determines the weight of the evidence and the credibility of the witnesses. *Samens v. LIRC,* 117 Wis. 2d 646, 660, 345 N.W.2d 432, 438 (1984). It is within the commission's discretion to award reasonable attorney fees. Sec. 230.85(3)(a)4, Stats. We are to set aside or modify the commission's decision if we conclude it erroneously interpreted a statute, but we are to give due weight to the commission's "experience, technical competence, and specialized knowledge." Sec. 227.57(10). When an agency construes a statute it is charged with applying, that construction is entitled to great weight, and we defer to it unless it is unreasonable. *Drivers, etc., Local No. 695 v. WERC,* 121 Wis. 2d 291, 294, 359 N.W.2d 174, 176 (Ct. App. 1984).

## ATTORNEY FEES

Section 230.85(3)(a)4, Stats., provides that the "commission may ... [o]rder payment of the employe's reasonable attorney fees." In determining the attorney fee award under this section, the commission looked to the case law developed under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. sec. 1988, which allows a court to award prevailing plaintiffs in federal civil rights actions "a reasonable

attorney's fee as part of the costs." The commission stated that the goal of the attorney fee provision in the whistleblower law is "to facilitate meritorious suits brought by state employes," and that fee awards should be sufficient to attract competent counsel without producing a windfall.

The commission first concluded that 31.5 hours was a reasonable amount of time for Hollinger's attorney to spend on this case, and it then decided that $110 per hour was a reasonable hourly rate. These figures generated a "base fee" of $3,465. No one challenges the reasonableness of either the amount of hours or the $110 per hour rate.

The commission then concluded that it needed to adjust the $3,465 "base fee." Relying upon the adjustment method used in *Lindy Bros. Bldrs., Inc. of Phila. v. American R. & S. San. Corp.,* 487 F.2d 161 (3rd Cir. 1973), the commission determined that because of the contingent nature of the case, the $3,465 "base fee" should be increased by twenty percent to $4,158. The commission increased the award to $4,686 to compensate Hollinger's attorney for work done after the commission had issued its proposed decision.

In *Thompson v. Village of Hales Corners,* 115 Wis. 2d 289, 305–06, 340 N.W.2d 704, 712 (1983), a case brought under the Federal Civil Rights Act, 42 U.S.C. sec. 1983, the trial court computed the number of hours reasonably expended and multiplied that number by a reasonable hourly rate to yield a "base rate." The trial court then adjusted this base rate, increasing it based on a contingency factor and quality factor. The supreme court affirmed.

The *Thompson* court adopted the reasoning of *Hensley v. Eckerhart,* 461 U. S. 424 (1983) and *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th

Cir. 1974) in approving enhanced fees in a Federal Civil Rights Act case brought in state court. *Thompson,* 115 Wis. 2d at 307–08, 340 N.W.2d at 713. Because Thompson was brought under federal law, Wisconsin statutes were not implicated. Also, since *Thompson,* federal law concerning fee enhancement has changed.

In *Pennsylvania v. Dela. Valley Citizens' Coun.,* 483 U.S. —, 97 L. Ed. 2d 585 (1987), a Federal Clean Air Act case, a plurality of the Supreme Court reversed a district court's attorney fee award because the court, relying on the contingency factor, had increased a reasonable "lodestar" (reasonable amount of hours times reasonable rate) amount. *Id.* at 591.

We agree with the analysis of the plurality opinion.

> [E]nhancing fees for risk of loss forces losing defendants to compensate plaintiff's lawyers for not prevailing against defendants in other cases. This result is not consistent with Congress' decision to adopt the rule that only prevailing parties are entitled to fees. If risk multipliers or enhancement are viewed as no more than compensating attorneys for their willingness to take the risk of loss and of nonpayment, we are nevertheless not at all sure that Congress intended that fees be denied when a plaintiff loses, but authorized payment for assuming the risk of an uncompensated loss. Such enhancement also penalizes the defendants who have the strongest case; and in theory, at least, would authorize the highest fees in cases least likely to be won and hence encourage the bringing of more risky cases, especially by lawyers whose time is not fully occupied with other work. Because it is difficult ever to be completely sure that a case will be won, enhancing fees for the assumption of

the risk of nonpayment would justify some degree of enhancement in almost every case.

Weighing all of these considerations, we are unconvinced that Congress intended the risk of losing a lawsuit to be an independent basis for increasing the amount of any otherwise reasonable fee for the time and effort expended in prevailing.

*Pennsylvania,* 97 L. Ed. 2d at 597.

If tribunals increase attorney fees to an amount exceeding a reasonable attorney fee because of risk of loss, this results in the lowest fees being awarded to plaintiffs with the best cases, and the highest fees being awarded to plaintiffs with cases least likely to succeed. The highest-of-all fee would be awarded in a case where the plaintiff had little chance to succeed overall but who succeeded on one significant issue out of several litigated. *See Footville State Bank v. Harvell,* 146 Wis. 2d 524, 540, 432 N.W.2d 122 (Ct. App. 1988) (party who succeeds on one significant issue entitled to attorney fees on that issue, where case is a type where attorney fees are awardable).

The result of awarding the highest fees for the worst cases is to create a precipice dividing bad cases from frivolous cases. Section 814.025, Stats., penalizes those who bring claims "without any reasonable basis in law or equity ...." If a litigant brings a nearly-frivolous claim and succeeds in part, he or she is rewarded by the highest attorney fee multiplier. If the claim crosses the line and is found to be frivolous, the result suddenly changes. The litigant and his or her attorney are then penalized by an award of reasonable attorney fees to the opposing party.

We do not believe the Wisconsin Legislature intended this curious result when it provided for an award of attorney fees in state employment relations

cases. The legislature enacted sec. 814.025, Stats., "to deter litigants and attorneys from commencing or continuing frivolous actions and to punish those who do so." *Stoll v. Adriansen,* 122 Wis. 2d 503, 511, 362 N.W.2d 182, 187 (Ct. App. 1984). That intent is inconsistent with a system of awarding higher-than-reasonable attorney fees to encourage litigants to walk as closely as possible to the line separating claims with little basis from claims without any reasonable basis.

There is another reason to conclude that sec. 230.85(3)(a)4, Stats., does not permit the use of a multiplier. The term "reasonable attorney fees" had been discussed and defined prior to 1984, when sec. 230.85(3)(a)4 was created by 1983 Wis. Act 409. In *Touchett v. E Z Paintr Corp.,* 14 Wis. 2d 479, 488, 111 N.W.2d 419, 423 (1961), the court quoted *In re Huffman's Estate,* 36 A.2d 640, 643 (Pa. 1944):

> "The things to be taken into consideration in determining the compensation to be recovered by an attorney are the amount and character of the services rendered, the labor, the time, and trouble involved, the character and importance of the litigation, the amount of money or value of the property affected, the professional skill and experience called for, and the standing of the attorney in his profession; to which may be added the general ability of the client to pay and the pecuniary benefit derived from the services." (Citation omitted.)

In 1969, our supreme court promulgated the Code of Professional Responsibility, which listed factors to be used as guides in determining the reasonableness of an attorney fee:

414

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

DR 2–106, 43 Wis. 2d ix, xxix (1969), now SCR 20:1.5. These factors were reaffirmed in *Wengerd v. Rinehart,* 114 Wis. 2d 575, 584, 338 N.W.2d 861, 867 (Ct. App. 1983). By 1984, the term "reasonable attorney fees" had acquired a meaning that did not include the use of multiplier.

As with the Fair Employment Act, secs. 111.31 to 111.395, Stats., the purpose of requiring a losing party to pay the winner's attorney fees is to make whole the "whistleblower" who is retaliated against for his or her action. *See Watkins v. LIRC,* 117 Wis. 2d 753, 764, 345 N.W.2d 482, 487 (1984) (reasonable attorney fees necessary in Fair Employment Act to make employe whole). Requiring a payment in excess of 100% of the victim's attorney fees does not make a victim whole—

it becomes a windfall for the victim or his or her attorney.

Nor do we accept the argument that attorney fee enhancers implement legislative intent by assuring that all possible claims will be brought. Section 814.025, Stats., operates as a check on such a theory. The result of paying an enhanced fee because of contingency or risk is that attorneys are paid in excess of reasonable fees to compensate for cases taken but lost. Had the legislature intended both successful and unsuccessful whistleblower claimants to be entitled to attorney fees, it could have so provided. It would be odd indeed that if the legislature intended this result, it would wish to reach it by the circuitous route Hollinger suggests.

We also disagree with Hollinger that in order to attract competent counsel, the commission must increase an otherwise reasonable fee. In this case, there was no guarantee of an upward fee adjustment, since the statute provides that the commission *may* award reasonable attorney fees. Hollinger was able to secure excellent and experienced counsel. This case itself is proof that more-than-reasonable attorney fees are not needed, and would result in a windfall. The commission abused its discretion by ordering a more-than-reasonable attorney fee, thus violating sec. 230.85(3)(a)4, Stats. We therefore reverse on this issue and remand to the circuit court with instructions to remand to the Wisconsin Personnel Commission with directions to enter an order granting Hollinger attorney fees in the amount of $3,905.[4]

---

[4]This includes the reasonable amount for attorney fees incurred both before and after the proposed decision was issued.

■ It is undisputed that the UW made a good faith offer of unconditional reinstatement. In *Anderson v. Labor & Industry Rev. Comm.,* 111 Wis. 2d 245, 254, 330 N.W.2d 594, 599 (1983), while interpreting sec. 111.36(3)(b), Stats. 1973 (now sec. 111.39(4)(c)), the supreme court adopted the federal rule that a valid offer of reinstatement ends the accrual of back pay. Section 111.39(4)(c) provides that "amounts earnable with reasonable diligence by the person discriminated against ... shall operate to reduce backpay otherwise allowable." Section 230.85(3)(d), Stats., provides that "amounts earnable with reasonable diligence by the person subjected to the retaliatory action or threat shall reduce backpay otherwise allowable." We see no reason why the virtually identical language in two statutes which have similar goals should be subject to differing interpretations. We conclude that a valid offer of unconditional reinstatement ends the accrual of back pay. *Anderson,* 111 Wis. 2d at 254, 330 N.W.2d at 599.

Hollinger argues that back pay should continue to accrue despite the UW's valid offer of reinstatement because accepting the UW's employment offer required her to break her teaching contract. She asserts she should not be required to break her contract for public policy reasons. We need not address this issue. Although Hollinger testified that she wished to finish her year's teaching contract, it is undisputed that the day before her contract began, she filed an employment application with the Waukesha Public School District. On that application, in response to the question of when she would be available for employ-

ment, she put "2 weeks." The commission, the sole judge of credibility, disbelieved Hollinger's newly-asserted belief in the sanctity of contracts. *Samens,* 117 Wis. 2d at 660, 345 N.W.2d at 438.

Reasonable minds could have reached the same conclusion as the commission that Hollinger would have broken her contract to take another position. There is substantial evidence to support this conclusion. We affirm the commission on this issue.

*By the Court.*—Judgment affirmed in part, reversed in part, and cause remanded with instructions. No costs to either party.