THE PEOPLE *ex rel.* THE ILLINOIS EDUCATIONAL LABOR RELATIONS BOARD *et al.*, Plaintiffs-Appellants, v. OREGON COMMUNITY UNIT SCHOOL DISTRICT 220, Defendant-Appellee.

Second District   No. 2—91—1057

Opinion filed August 27, 1992.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Daniel N. Malato, Assistant Attorney General, of Chicago, of counsel), for appellants People *ex rel.* Illinois Educational Labor Relations Board and Kenneth Scott.

Gregory J. Malovance and Steven E. Mitchel, both of Winston & Strawn, of Chicago, for appellant Oregon Education Association.

Daniel C. Hawkins, of Ward, Murray, Pace & Johnson, P.C., of Sterling (David E. Murray, of counsel), for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiffs, the Illinois Educational Labor Relations Board (Board), Kenneth Scott, and the Oregon Education Association, appeal from an order of the circuit court of Ogle County which denied the Board's petition for enforcement of an administrative order it entered against defendant, Oregon Community School District 220 (District). Plaintiffs assert the trial court erred in finding that (1) the District had complied with the Board's administrative order and (2) the Board failed to comply with its own rules.

The District and the Oregon Education Association were parties to a collective bargaining agreement effective for the 1989-90 school year. On December 18, 1989, the District voted to terminate Kenneth Scott from his position as head football coach at Oregon High School. Scott filed a grievance with the District alleging that he was terminated in violation of the collective bargaining agreement. The grievance was ultimately submitted to arbitration pursuant to a binding arbitration provision in the collective bargaining agreement. On June 25, 1990, the arbitrator sustained Scott's grievance, finding that the District did not have "good cause" to remove him from his coaching assignment, as required by the collective bargaining agreement. The District subsequently voted again not to retain Scott and publicly stated that it was rejecting the arbitrator's award.

On July 23, 1990, Scott filed an unfair labor practice charge with the Board alleging that the District had violated the Illinois Educational Labor Relations Act (Act) (Ill. Rev. Stat. 1989, ch. 48, par. 1701

*et seq.*) by refusing to comply with the provisions of a binding arbitration award. An administrative hearing was held regarding the charge, and, on December 31, 1990, the hearing officer issued a recommended decision and order.

The hearing officer found, essentially, that the arbitration award was binding and the District had, therefore, violated sections 14(a)(8) and 14(a)(1) of the Act (Ill. Rev. Stat. 1989, ch. 48, pars. 1714(a)(8), (a)(1)), which prohibit educational employers from refusing to comply with the provisions of a binding arbitration award. In response to one of the District's arguments, the hearing officer noted that the arbitrator did not award Scott tenure as football coach, but simply ordered that he be reinstated for one year. The hearing officer recommended an order which, among other things, directed the District to comply immediately with the provisions of the arbitrator's award and to make Scott whole for its prior refusal to comply. The District did not file exceptions, and on February 15, 1991, the Board issued an order making the hearing officer's recommendations final and binding on the parties.

The District responded to the hearing officer's decision by reinstating Scott as head football coach and awarding him back pay on January 21, 1991. The reinstatement, however, was for the 1990-91 school year. On January 25, Scott wrote a letter to the Board's acting director, Julie K. Hughes, asserting that the District's offer of reinstatement did not amount to compliance with the Board's order. The District responded, also by letter, that it had complied, and, on March 15, Hughes issued a recommended decision and order. The acting director reached her decision after examining the arbitrator's award, the hearing officer's decision, and the parties' written positions as stated in the letters they had sent to her. Hughes found that, because the District reinstated Scott to a year in which the football season was already over, the District's offer was not a *bona fide* offer of reinstatement. Hence, it did not constitute compliance with the Board's order. Hughes recommended that the Board instruct its general counsel to seek enforcement of the reinstatement order.

Finding that the District's offer to Scott was not a *bona fide* offer of reinstatement because it was not for the same or a substantially equivalent position, the Board affirmed Hughes' decision and adopted her conclusions and rationale on May 16, 1991. The Board's counsel was directed to seek enforcement of the February 15, 1991, reinstatement order. The Board expressly noted that the 1991-92 school year was the next chance for Scott to continue as head football coach and thus presented the earliest opportunity for the District to implement

the arbitration award. The District petitioned the Illinois Appellate Court, Fourth District, for administrative review of the Board's May 16 order (apparently pursuant to section 16(a) of the Illinois Educational Labor Relations Act (Ill. Rev. Stat. 1989, ch. 48, par. 1716(a)), which provides for administrative review of Board orders directly by "the Appellate Court of a judicial district in which the Board maintains an office"), but the petition was dismissed for lack of an appealable order.

On May 28, 1991, the District hired a replacement for Scott as head football coach for the 1991-92 school year. A few days later, June 6, the Board filed a petition in the circuit court seeking enforcement of its February 15 and May 16 orders to reinstate Scott. The District filed an answer, and Scott and the Oregon Education Association were allowed to intervene as party petitioners.

Following a hearing, the circuit court found that, as a result of the actions it had taken with regard to Scott, the District was in full compliance with the Board's order of February 15, 1991, and that the order of May 16, 1991, was not entitled to enforcement since the Board did not comply with its own rules in formulating the order. Accordingly, the Board's petition for enforcement was denied. The Board, Scott, and the Oregon Education Association then filed this timely appeal.

We begin by addressing the plaintiffs' contention that the trial court erred in finding that the District had complied with the Board's reinstatement order. On January 21, 1991, Scott was given back pay and reinstated as head high school football coach. Plaintiffs take the position that, by the time Scott was reinstated, the football season was over and done with for the 1990-91 school year and Scott, therefore, was not reinstated to the same or a substantially equivalent position as the one from which he had been terminated. Absent such a position, according to plaintiffs, Scott's reinstatement was a sham.

■ Plaintiffs argue first that the trial court erred by reviewing *de novo* the Board's determination that the District had not complied. They posit that the Board's decision was an enforcement decision and should not have been overturned unless it was arbitrary, capricious, or a clear abuse of discretion. Plaintiffs make a lengthy argument that enforcement proceedings are investigatory and not adjudicatory and, as such, are subject only to the arbitrary and capricious standard of review. While this argument may or may not have merit, we do not need to resolve it here. The District has maintained throughout these proceedings that it complied with the Board's order when it reinstated Scott for the 1990-91 school year. The facts of what the Dis-

trict did are clear and undisputed. What is at issue then is the legal effect of those facts. Hence, the trial court was faced with only a question of law, the same question of law that the Board had determined favorably to Scott. Courts exercise independent review over an agency determination of a question of law and cannot let stand such a determination if it is erroneous. (*Kankakeeland Community Action Program, Inc. v. Department of Commerce & Community Affairs* (1990), 197 Ill. App. 3d 1067, 1077; *Carson Pirie Scott & Co. v. Department of Employment Security* (1987), 164 Ill. App. 3d 530, 535, *aff'd in part, vacated in part, & rev'd in part on other grounds* (1989), 131 Ill. 2d 23.) The trial court did not err in making an independent determination on the legal issue of the District's compliance.

In a similar argument plaintiffs complain that the trial court did not give proper deference to the Board's interpretation of its own order. Specifically, they claim that the Board's interpretation required that Scott be given a *bona fide* offer of reinstatement, meaning that he had to be reinstated at a time which would allow him to actually engage in coaching activities. We do not quarrel with the propositions urged by plaintiffs that the courts generally give administrative agencies broad discretion when making decisions based on the statutes they were created to enforce (see *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361) or that an agency's interpretation of its own regulations is to be accorded great deference by the courts (*Rend Lake College Federation of Teachers, Local 3708 v. Board of Community College, District No. 521* (1980), 84 Ill. App. 3d 308, 311-12). Here, however, in the process of interpreting, the Board was required to resolve the question of whether, as a matter of law, the District's actions met the requirement for reinstatement. As we said, courts are to exercise independent review of an agency's determination of legal questions, and, while deference will be accorded to the extent possible, the agency's resolution may not stand if it is erroneous. (*Kankakeeland Community Action Program*, 197 Ill. App. 3d at 1077.) The record here shows that the trial court was keenly aware of the way the Board interpreted its order but found that interpretation to be in error.

■ This brings us to the question of whether the trial court correctly decided that the District's offer to Scott amounted to reinstatement and thus constituted compliance with the Board's order. While no cases directly on point have been decided under the Illinois Educational Labor Relations Act, numerous decisions have been rendered under similar Federal statutes as well as similar

statutes in foreign jurisdictions. These cases are instructive here. It is established in the private sector that offers of reinstatement must be *bona fide* offers. (*Imco/International Measurement & Control Co.* (1985), 277 NLRB 962; *Workroom for Designers, Inc.* (1985), 274 NLRB 840.) In order to be *bona fide*, an offer of reinstatement must be for the same or a substantially equivalent position. *NLRB v. Blue Hills Cemetery, Inc.* (1st Cir. 1977), 567 F.2d 529, 530; *Anderson v. State Labor & Industry Review Comm'n* (1983), 111 Wis. 2d 245, 255, 330 N.W.2d 594, 599; *Kerr v. National Endowment for the Arts* (Fed. Cir. 1984), 726 F.2d 730, 733.

Plaintiffs, of course, rely on cases in which the employer was found not to have complied with an order of reinstatement. However, in those cases, after the wrongful discharge the employers changed the duties or responsibilities of the position in such a way that, when the employee was reinstated, he or she either had virtually no duties or the responsibilities had been downgraded so that the job was essentially different from what it had been previously.

In *John H. Kerr*, following an order of the Federal Merit Systems Protection Board, the employee was offered reinstatement to the same position at the same grade and the same pay. However, the single overriding function of the job, which included the bulk of the employee's former duties, had been shifted to another position, and no new duties had been assigned. Similarly, in *Carter of California, Inc.* (1980), 250 NLRB 344, 352-53, pursuant to an order of the NLRB, employees were reinstated as managers but without managerial authority. Responsibilities for writing contracts and handling company money and company keys were significantly reduced. A clerical employee was switched from accounts receivable responsibilities to spot checking contracts for errors. Although these employees were given work, they were not restored to the essential functions of the jobs they held previously.

The offer of reinstatement in *Anderson* was not valid because there was no showing that the new job offered was substantially equivalent to the employee's former job. The Wisconsin Supreme Court noted that comparability in salary is not the only test of a reasonable offer of alternative employment. The court stressed that comparability in status is also important, particularly with regard to opportunities for advancement or for other employment. Accordingly, a wrongfully discharged employee did not have to accept alternative employment of an inferior nature, or employment for which he was not qualified by experience, or which might damage his professional career. Finally, in a slightly different case, *Chicago*

*Newspaper Guild v. Field Enterprises, Inc.* (7th Cir. 1984), 747 F.2d 1153, the employee was not returned to work at all despite the arbitrator's specific directions that he be again put to work, and the employer made no showing that the employee could not have been given a comparable job.

In our view, this case differs from plaintiffs' authorities in that the District made absolutely no changes in the position to which it reinstated Scott. He was offered the position of head football coach. No restrictions whatsoever were placed on the reinstatement. Neither the duties and responsibilities nor the authority of the job was eliminated or altered in any way. The position was precisely the one from which Scott was wrongfully removed. The job of reinstated head coach was neither inferior to his prior position as head coach nor was it one for which Scott was not qualified by experience. Also, it is most unlikely that reinstatement to precisely the same position would reflect poorly on Scott's status or reputation with regard to opportunities for advancement or other employment. While he did not coach during the 1990-91 season, it is not as though that was the only year he would have ever coached. The record reveals that Scott had been the school's head football coach for 15 years, certainly long enough to establish his credentials for purposes of prospective employment.

As we see it, that the 1990-91 football season had ended by the time Scott was reinstated is not determinative of this matter. The seasonal aspect of football is part and parcel of the job of a high school football coach. To be sure, since such coaches are actively coaching during the fall semester of the school year, that is their busiest season. This does not make any of them any less of a football coach during the rest of the year. It means only that their football activities subside—they do not terminate—after the football season. In fact, coaches do participate in coaching-related activities during the rest of the year. The record here reflects that Scott's request to attend a football clinic in April 1991 was approved by the District superintendent. The football-season/off-season fluctuation in a coach's work is very much the nature of the job. That Scott was reinstated during the off season does not mean that he was not given a *bona fide* reinstatement.

As the authorities cited above illustrate, the essence of valid reinstatement is that the employee must be restored to the same job or an equivalent job. In other words, he must be placed, as closely as possible, in the same position he was in before the employer's wrongful conduct. Here, Scott was reinstated at the end of January.

For that particular time of the year, Scott was placed in the same position he would have been in if he *had* been coaching in the fall. While he did not coach, the District gave him back pay to make up for not working during the football season. There is no indication in the record that Scott did not accept the back pay. Further, since the season was over and he was not required to be actively coaching, it appears Scott took advantage of a football clinic. Hence, except for the fact that he did not coach in the fall, Scott's job as head coach appears to have been following its usual yearly pattern. Scott's job consisted of very intense activity at one time of year and much less activity the rest of the year. We do not think that for him to be validly reinstated, the reinstatement period had to include the period of intense, hands-on football coaching.

We note in this regard that neither the arbitrator's award nor the hearing officer's decision specified that Scott had to be given another opportunity to coach. The arbitrator's award stated, in very general terms, only that "[t]he grievance is sustained. The Oregon Board of Education did not have 'good cause' to remove Kenneth Scott from his head coaching assignment." The hearing officer directed that the District cease and desist from "[r]efusing to comply with the provisions of a binding arbitration award." He also ordered the District to "[i]mmediately comply with the provisions of the arbitrator's award" and "[m]ake Kenneth E. Scott whole for the District's refusal to comply with the arbitrator's award." We think the District followed this final imperative of the hearing officer. The decision was issued on December 31, 1990. The District reinstated Scott and awarded him back pay on January 21, 1991, prior even to the Board's order making the hearing officer's recommendations final.

The position urged by the plaintiffs would require the District to postpone Scott's reinstatement from January to the following fall semester when the football season would begin in earnest. No authority is cited to us for such a postponement. In fact, the hearing officer's direction to "immediately" comply with the arbitration award is consistent with decisions calling for immediate and unconditional reinstatement which makes the employee whole for lost earnings. See, *e.g., Hoyleton Consolidated School District No. 29,* 6 Pub. Employer Rep. (Ill.) par. 1097, No. 89—CA—0057—5 (IELRB, June 29, 1990); *Anderson v. State Labor & Industry Review Comm'n* (1983), 111 Wis. 2d 245, 330 N.W.2d 594.

In our view, to require postponement, rather than back pay, as the means of making an employee whole would be to create the po-

tential for confusion, disruption, and uncertainty for any employer whose work was seasonal or cyclical in nature. For instance, employers could find themselves with too few workers when the busy season rolled around because, in the interim between ordered and actual reinstatement, the "reinstated" employees decided to take other work. We find that the hearing officer did indeed mean the District should immediately comply with the arbitration award and that the District responded in a proper fashion.

In sum, like the trial court, we conclude that the District complied with the arbitration award and the Board's order when it reinstated Scott for the 1990-91 school year and made him whole by giving him back pay. The trial court did not err on this matter. Consequently, the lower court correctly refused to enforce the Board's order in the fashion requested by the plaintiffs.

In light of our conclusion that the District complied with the arbitration award, we need not address the issue of whether the Board failed to comply with its own rules pertaining to a compliance hearing. The pertinent rules were triggered after Scott's reinstatement, so whether they were followed is irrelevant for purposes of this opinion. Too, it is the District which claims to have been prejudiced by the Board's failure to follow its own rules. Since the District has prevailed on the fundamental question of compliance, any prejudice to itself from the Board's conduct is of no consequence.

In accord with the reasoning set forth above, the order of the circuit court of Ogle County denying the Board's petition for enforcement of its orders is affirmed.

Affirmed.

INGLIS, P.J., and DUNN, J., concur.